TURNER *v.* FIDELITY & CASUALTY COMPANY OF NEW YORK.

112 425
115 85

112 425
122 552

112 425
p128 328

112 425
s70NW 898
s67ASR 428
129 1341
129 2341

112 425
d145 3311

112 425
149 1287
d149 288

112 425
f151 1232

1. INSURANCE — COMMENCEMENT OF SUIT—LIMITATIONS — WAIVER.
   A letter from an insurer to a claimant, asking that the matter be allowed to rest until the adjuster of the company can see the claimant or his attorney, constitutes a waiver of a provision in the policy limiting the time for furnishing proofs of loss and beginning an action on the policy.

2. SAME.
   Claimant in such case does not lose his right of action by delaying suit for 19 months after the receipt of the letter, although nearly a year is thus allowed to elapse after the expiration of the time limited in the policy itself.

3. SAME—TOTAL DISABILITY—WHAT CONSTITUTES.
   The disability of a real-estate broker resulting from the dislocation of his shoulder in an accident is not, as matter of law, partial only, so as to deprive him of the right to recover the indemnity provided by an accident policy insuring against loss resulting from injuries which "immediately and wholly disable and prevent him from prosecuting any and every kind of business pertaining to his occupation," where, although he goes to his office every day, he is practically unable to do any kind of work.[1]

Error to Saginaw; Wilber, J.. Submitted January 15, 1897. Decided April 27, 1897.

*Assumpsit* by Henry Turner against the Fidelity & Casualty Company of New York on a policy of accident insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*Hanchett & Hanchett*, for appellant.

*Beach & Gavit*, for appellee.

---

[1] With this case as reported in 38 L. R. A. 529, is an extensive note on the question what constitutes total disability of the insured.

LONG, C. J. This is an action to recover a weekly indemnity under an accident policy issued by the defendant to the plaintiff on the 8th day of January, 1888, and subsequently renewed from year to year, the last renewal certificate covering a period from January 8, 1894, to January 8, 1895. On February 10, 1894, while the plaintiff was carrying wood on a wheelbarrow, he slipped and fell, dislocating his right shoulder. He claims an indemnity under the policy for a total disability for a period of 10 weeks. At the time the policy was issued, and at the time of the accident, the plaintiff was engaged in the business of loaning money on personal security and real estate. He was insured as a banker and real-estate dealer. He made two claims under this policy, the first one being made on March 12, 1894. Nothing was done in respect to this claim. Afterwards, and on June 21, 1894, the plaintiff made a second statement of claim, which was forwarded to the company by Camp & Brooks, his attorneys. In regard to this letter, the defendant wrote the following letter, dated July 2, 1894:

"Your favor of June 23d, inclosing claim blank regarding the above for an alleged injury stated to have been received February 10th, duly to hand. I beg to say that we have already received a claim blank from Mr. Turner for an alleged injury stated to have been received February 10th. We have already notified you that we fail to recognize any liability in that matter, and return the claim blank herewith. 'One of our adjusters will be in Saginaw shortly, and we will have him call upon you, and discuss this matter with you. We think he will be able to show you that there is a breach of warranty in Mr. Turner's application, and therefore no liability on the part of the company under the policy Mr. Turner holds. Kindly allow the matter to rest until our adjuster can see you, and oblige."

Nothing more was done by either party until this suit was commenced, February 4, 1896.

The first assignment of error relates to the refusal of the court to direct a verdict for the defendant, on the ground that the suit was not commenced within one year

from the date of the injury. The policy provides that "unless affirmative proof of death or duration of disability is so furnished within seven months, and any legal proceedings for recovery hereunder is begun within one year, from the time of such accident, all claims based thereon shall be forfeited to the company." The claim of plaintiff is that the letter above quoted, written to Camp & Brooks, constitutes a waiver of this clause of the policy. On the other hand, it is contended that inasmuch as, during the time from the receipt of the letter to the commencement of suit, no adjuster of the company called upon plaintiff or his attorneys, and there was no communication of any kind between them on the subject of the adjustment of the claim, the plaintiff was not justified in waiting a year and a half before bringing suit; and, again, that the statement in the letter requesting him to let the matter rest would not warrant or justify the plaintiff in permitting the year to go by without bringing his suit if he desired to protect his rights; that the plaintiff might have been justified in waiting a reasonable time after receiving the letter before taking action, but not in waiting the time he did, as the letter held out no hope or promise of an adjustment, but merely asked that an opportunity might be given the company to explain why liability was denied.

This clause in the policy, however, was one which could be waived by the company. It cannot be construed as a limitation fixed by law. While the plaintiff was not bound to wait before bringing suit, yet it is apparent that he did wait at the request of the company. He testified that the reason he did not begin his action within the 12 months was because of the receipt of the letter of July 2d. Such clauses in policies of insurance, while held valid as contracts, may be waived by the company. The law does not favor clauses of limitation in policies of insurance, and they are strictly construed, and it does not require the positive act of the company inducing postponement; but, where the evidence is conflicting,

the question of waiver is one for the jury. We think, however, in this case, that there is no conflict in the evidence, and that the letter was positive in its terms, asking that the matter be allowed to rest until the adjuster of the company could see the plaintiff or his attorneys. As was said in *Bonenfant* v. *Insurance Co.*, 76 Mich. 657: "Forfeiture is not favored either in law or equity, and a provision for it in a contract will be strictly construed; and courts will find a waiver of it upon slight evidence when the equity of the claim is, under the contract, in favor of the assured." See, also, *Lyon* v. *Insurance Co.*, 55 Mich. 146 (54 Am. Rep. 354), and cases there cited; *Peoria, etc., Ins. Co.* v. *Hall*, 12 Mich. 202; 2 May, Ins. § 488; *German Fire Ins. Co.* v. *Carrow*, 21 Ill. App. 631; *Thompson* v. *Insurance Co.*, 136 U. S. 287.

It is next contended that the plaintiff's own evidence and the evidence of his attending physician do not support the finding that he was totally disabled in the sense intended by the policy, and that the court should so have instructed the jury. The policy provides an indemnity of the sum of $50 per week "against loss of time, not exceeding 26 consecutive weeks, resulting from bodily injuries effected during the term of this insurance through external, violent, and accidental means, which shall, independently of all other causes, immediately and wholly disable and prevent him from prosecuting any and every kind of business pertaining to his occupation above stated." Upon this point the plaintiff testified substantially that the fall entirely disabled his arm to the shoulder, and that it remained in that condition 10 weeks; that his business consisted generally in personal-security loans, and that during that time he did no business at all; that he could not dress himself without help, and that he had help during the whole time; that he did not do any work or business during that time, but had a man to do it for him; that he went to his office every day for a short time, but was unable to do any kind of work. We find nothing in the record which shows, or tends to

show, from the testimony of the plaintiff or his attending physician, that the plaintiff was not totally disabled from attending to and prosecuting any and every kind of business pertaining to his occupation. At least, it was a question for the jury to determine, and the court submitted it in these words:

"I think that a fair interpretation of that clause is, not that he must be so disabled as to prevent him from doing anything pertaining to the business, but that he must be wholly disabled, so as to prevent him from doing any and every kind of business pertaining to his occupation; not that he might do some one thing in regard to it, but that he must be wholly disabled, so as to prevent him from doing any and every kind of business pertaining to that occupation. I submit that to you as a question of fact to find whether he was so disabled, and for what length of time, under this policy."

In the case of *Young* v. *Insurance Co.*, 80 Me. 244, a policy in the exact language of this policy was considered. The court used this illustration:

"Suppose a barber, who can use his razor and shears in his right hand only, but can use his left to wipe his customer's face, comb and dress his hair, and receive pay and make change, by an accident is wholly deprived of the use of his right hand, so that he can neither shave his customer nor cut his hair, can it be said that he is not wholly disabled from the prosecution of his business as a barber?"

It was held by that court that there is a difference between being able to perform any part of one's business and any and every kind of business pertaining to one's occupation.

If this language in the policy is ambiguous and suceptible of two constructions, then the question must be solved in favor of the insured; for it is well settled in this State that where a stipulation or exception to a policy, emanating from the insurer, is capable of two meanings, the one is to be adopted which is the most favorable to the insured; that it ought to be framed with such deliberate care that no form of expression by which,

on the one hand, the party insured can be caught, or by which, on the other, the company can be cheated, should be found on the face of it. *Utter* v. *Insurance Co.*, 65 Mich. 545 (8 Am. St. Rep. 913); *Grand Rapids Electric Light & Power Co.* v. *Fidelity & Casualty Co.*, 111 Mich. 148.

It is further contended that the attending physician having testified that, in treating this dislocation, he discovered that the plaintiff had sustained an injury at some time to that shoulder, which produced, as he called it, "traumatic rheumatism," and that a part of the pain was due to that, therefore the company should not be called upon to pay for an injury the inconvenience of which resulted partly and indirectly from disease or bodily infirmity previously existing. We think that question was fully and fairly submitted to the jury, and need not be discussed.

The judgment will be affirmed.

The other Justices concurred.