COLUMBIAN MUT. LIFE INS. CO. *v.* CRAFT.

(Division A. Dec. 12, 1938. Suggestion of Error Overruled Mar. 20, 1939.)

[185 So. 225. No. 33373.]

Stevens & Stevens, and **George R. Nobles**, all of Jackson, for appellant.

238

**O. B. Triplett, Jr.,** of Forest, and **Homer Currie,** of Raleigh, for appellee.

Argued orally by **J. M. Stevens**, for appellant, and by **O. B. Triplett, Jr.**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee was insured by appellant on February 8, 1926, by a combination life, health and accident insurance policy, and a fixed, composite premium was payable thereon by the insured on or before the tenth day of each succeeding month. About the last of the year 1926, appellee's knees became sore and swollen and on January 25, 1927, he went to the Touro Infirmary for treatment, where he remained until sometime in July, 1927. After some observation, his trouble was diagnosed as arthritis deformans of so-called atrophic type, and on July 9, 1927, the attending physician gave his certificate that appellee was totally and permanently disabled on account of said disease, which certificate was forwarded to and received by appellant late in the month of June, 1927, as hereinafter mentioned. Appellee had paid all monthly premiums up to and including the entire month of May, 1927.

Upon being sent away from the Infirmary with the opinion by those in charge that there was no treatment which was likely to bring about any improvement, appellee returned to his home and continued there and elsewhere such treatment as he could get, but his condition grew worse. Seeking something by which he could derive a livelihood he was elected circuit clerk of Smith County in 1931, and has since that time held that office,

performing the duties thereof by the hands of employed help, but under his directions.

The condition of appellee is, and since the date of the certificate aforesaid has been, that of a helpless cripple, painfully making his way, to the limited extent that he can move about at all, on crutches. He is unable to bend his back, or legs, or to turn his head; unable to get in or out of bed or in or out of a car without help; unable to take off or put on any of his clothes; unable to comb his hair or tie his tie; but in a manner he can handle books and papers when, but only when, put in an easy position and within his easy reach. All his limited movements are attended with pain, and alleviating sedatives are constantly necessary. The medical testimony is undisputed that there is no known remedy which, in any probability, will effect a cure.

Appellant contends that because, nevertheless, appellee is able to direct the work of his office, and does direct it to the satisfaction of the electorate, the stated disability is not within the particular policy, called by appellant a Covenant; and that therefore appellant is not liable in this action by appellee which is for all the annual installments of the disability insurance which have accrued since June, 1927.

The provision in respect to the total and permanent disability insurance under the Covenant or Policy is for a certain annual payment in case the insured shall suffer "any permanent and disabling illness . . . as shall render a member helpless to the extent of permanently preventing him from following or directing any gainful labor, trade, occupation, business or profession. . . ." If the quoted provision in reference to "directing any gainful labor," etc., were omitted, there would be no debatable question, under the undisputed proof and under many decisions in this state, as well as under the weight of authority everywhere, that the insured would be entitled to recover.

The question then is, What is the meaning which

ought to be ascribed to the terms, ''directing any gainful labor,'' etc.? If they are to have a literal interpretation, they would operate to exclude liability in all but the rarest cases. Any man that knows how to do any given piece of work, or how to conduct any particular business, can direct others how to do it, unless he is insane or is in a coma or is so distracted with constant pain as to render him incapable of rational thought. Directions for the conduct of a business, literally speaking, might be given from the bedside by the bedridden, or from a rolling chair by a helpless paralytic. The language used in Equitable Life Assur. Soc. v. Serio, 155 Miss. 515, 520, 124 So. 485, thus becomes applicable. There it was said [page 486] ''Courts must give these contracts a reasonable interpretation, an interpretation which will stand the test of honesty of purpose in their meaning, and which will square the transaction between the parties in making the contract with some valuable object in contemplation at the time. . . . To give said terms the strict or literal interpretation stated would be to convict a reputable insurance company of having put out among our people, and having collected from them premiums on, a policy provision which in effect would be scarcely more than a cheat, a pretense and a fraud. Certainly no such could have been intended.''

In order to save the last quoted terms from the extremity above mentioned, it becomes necessary to interpret them as having application only to an insured whose usual and ordinary occupation is that of directing others in the performance of their duties, and not to an insured who, in the conduct of his business or occupation, usually or ordinarily does the work or a substantial portion of it himself. This is the holding of the court in Beach v. Supreme Tent, 74 App. Div. 527, 77 N. Y. S. 770, affirmed 177 N. Y. 100, 69 N. E. 281, liberally quoted from and relied on in Halperin v. Equitable Life Assur. Soc., 125 Misc. 422, 210 N. Y. S. 720. These are the only cases, so far as we have been able to presently find, which

have definitely and pointedly discussed the particular terms here under consideration, and we are in agreement with what they have said.

We may take notice of the fact that, in counties where the business in the circuit court is not large, as is the case of the county and of the clerk's office here before us, the circuit clerks usually do nearly all the work of the office themselves, or the larger part thereof, and hence when one of them, insured under a policy such as this, becomes helpless to do more than give directions to hired help, and even that under constant pain, the insured is not precluded from the protection of the insurance, because of any such terms in the policy as that dealt with herein. And there is no suggestion that there is any other business open to appellee at which he could earn a penny in his present and prospective condition.

Appellant contends, in the next place, that the policy, so far as disability benefits are concerned, had lapsed by the nonpayment of the monthly premium due on or before June 10, 1927, and that it received no notice or proof of such disability before the date last mentioned. Pertinent stipulations of the policy on that point are as follows: "If this Covenant after being in force one full year shall lapse for non-payment of premiums, the Society will continue in force the insurance under the Covenant for a period of sixty days from the date such premiums were due." Under this provision, unless expressly qualified by some other provision, the entire contract and all its benefits remained in force until August 1, 1927. Within this sixty days, and before the date last aforesaid, the insured had forwarded the certificate showing his total disability, the head office of the Society had received it, had denied all liability, had declined to furnish blanks for formal proof of loss or disability, and hence, the insured was relieved of any duty to furnish such formal proof. The case stands as if every requisite of the proof of loss had been fully and satisfactorily complied with or furnished within the period of sixty

days, which, as stated, was the allowable period therefor.

Appellant argues, however that the provision quoted in the next foregoing paragraph applies only to the insurance for death benefits and not to the health or accident features, and appellant calls attention to paragraph 7 under the provisions respecting Total and Permanent Disability which provides compensation for such disability "if all installment premiums have been paid and this Covenant is in full force," and to paragraph 15 which is as follows: "Provisions of this Covenant for the payment of Special Disability and Accident Benefit become null and void upon failure of the Assured to pay all installments of premiums required on this Covenant;" and appellant points also to the table of values affixed to the policy—from which however we find no appreciable aid.

Reading all these provisions, quoted in the foregoing paragraphs, together, it may as well be said that since the payment of all installments of premiums as and when due throughout the preceding one year had accomplished the result of continuing the insurance in force for sixty days, the payment of premiums during the sixty days were not required so far as concerns that period—were not required to accomplish a result that had already been accomplished. Compare McCain v. Lamar Life Ins. Co., 178 Miss. 459, 475, 172 So. 495. In any event, plausible and persuasive as the agreement of appellant may seem, it introduces no more than a contention that we eke out by doubtful construction a result favorable to the insurer, when the rule is that questions of doubtful construction of insurance policies shall be resolved in favor of the insured. All that appellant would have had to do in order to take its contention out of the field of doubt would have been to insert the words "death benefit" next preceding the word "insurance" in the extended insurance provision above quoted; and having failed to do so, we decline to make the insertion

for it. As respects a feature wherein there is no practical difficulty in making the language plain and free from doubt, we are in accord with the remark found in Turner v. Fidelity, etc., Co., 112 Mich. 425, 70 N. W. 898, 38 L. R. A. 529, 67 Am. St. Rep. 428, that a policy or certificate or insurance "should be framed with such deliberate care that no form or expression by which, on the one hand, the party assured can be caught, or by which, on the other, the company can be cheated, should be found on the face of it;" [page 899] and the only effective way to foster that result is to construe any doubtful provision against the company or society which prepared and put forth the policy.

The declaration in this case was not filed until June 25, 1937. Appellant urges that the entire action was barred by the six-year statute of limitation, Code 1930, Section 2292, to which appellee has replied that no part of the demand is barred because, as he avers, appellant fraudulently concealed the cause of action by misrepsentations. The disability benefits were payable at the end of each year, or in annual installments; and a cause of action accrued for each of them when respectively due, and not before. The installments which became due more than six years before the commencement of the action are bared, and the remainder are not. 37 C. J. pp. 854, 855. The facts show an honest difference of opinion, and with reasonable grounds for that difference, as respects liability, and not a case of fraudulent concealment or wilful misrepresentation. Section 2312, Code 1930, on fraudulent concealment of the cause of action, has no application to the case.

The judgment will be affirmed as to all installments which become due within six years next before the commencement of the action, and reversed as to the others; and the cause will be remanded that the proper calculations may be made in the trial court.

Affirmed in part and in part reversed, and remanded.