LAMAR LIFE INS. CO. *v.* BOUNDS.

(In Banc. April 22, 1946.)

[25 So. (2d) 707. No. 36097.]

Wells, Wells, Newman & Thomas, of Jackson, for appellant.

**Graham & Graham**, of Meridian, for appellee.

Argued orally by **Earl T. Thomas,** for appellant, and by **S. M. Graham,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Between the hours of six and seven on the evening of April 16, 1945, appellee's husband, Ross R. Bounds, was being driven westwardly along Lynch Street in the City of Jackson, in an automobile belonging to Bounds, the latter occupying the rear seat. The driver was a bell-boy temporarily procured from a local hotel. The automobile was being operated at the rate of approximately twenty-

five miles per hour, but in a hard rain. As the car had passed some distance beyond the Clifton Street intersection, an automobile parked on the north side of Lynch Street suddenly backed out into the street and into the path of the Bounds' car, with the result that there was a violent collision in which Bounds, a heavy man, was thrown forward over the front seat and against the instrument panel of his car, from which his death followed almost instantly.

Mr. Bounds was insured under a life insurance policy in the sum of $5,000, carried by the appellant, with a double indemnity provision in case of death by accident. The double indemnity, called a supplemental contract, was subject to the following general provisions:

"It is mutually agreed that the provisions hereinabove set forth in this Supplemental Contract as to Insured shall not apply to Insured *in case of his death* or dismemberment *resulting from any of the following causes*:

"(a) Self-destruction, sane or insane, or any attempt thereat, sane or insane;

"(b) Assault by another person provoked by the Insured;

"(c) Participation as a passenger or otherwise in submarine or aeronautic operation, or caused directly or indirectly, wholly or in part by riot, strike or insurrection or any act incident thereto, either on land or water; or resulting from or *while the insured is engaged in any violation of law*; or while the Insured is engaged in military or naval service of any kind or form, or from or while he is engaged in police duty in any military, naval or police organization."

We have italicized the provisions here under review and add that there is a further provision that the incontestable clause in the principal contract shall have no reference to the supplemental or double indemnity contract.

The insurance company paid the amount of the principal contract and on being sued for the double indemnity

filed two special pleas, which, to summarize, presented as defenses the following alleged issues: That Mr. Bounds at the time of the injury and death and in violation of law was (1) engaged in transporting intoxicating liquor; was (2) in possession of intoxicating liquor; was (3) drunk in a public place, and was (4) participating in the operation on a public highway of an automobile by an intoxicated driver, the allegation being that the bell-boy was drunk to the knowledge of Bounds, who, nevertheless, directed the bell-boy to drive as he was doing, and that furthermore the drunken condition of the driver was the cause of the collision and death.

The proof in support of these pleas was insufficient to sustain the allegations thereof under numerals (3) and (4) above summarized, but did disclose that a pint bottle of whiskey, about half full, was in the car between the rear and front seats at the time of the collision; and for the purposes of the case we will concede that at the time the insured was violating the laws as respects numerals (1) and (2). But there is no proof that the presence of the half-pint of liquor had any causal connection whatever with the collision and death, nor did it substantially increase the risk—any more than if it had been a tire iron or a hammer.

It is the contention of the insurance company that under the quoted general provisions it was not necessary that there be any causal connection between the violation of law and the injury and death, but that inasmuch as the injury and death happened ''while the insured was engaged in a (any) violation of law,'' this was sufficient to avoid the double indemnity, the argument being that there is nothing in that language which required the existence of causal connection, and the argument is apparently supported by several cited cases.

The beneficiary meets this argument by calling attention first, to the fact that all the quoted exceptions in the general provisions are made subject to or dependent upon the leading or controlling clause to the effect that

the exceptions are applicable when the death or injury results *from any of the following causes,* and that among these is the exception, so following, "while the insured is engaged in any violation of law," with the consequence that when the entire language or the general provisions is considered, the exceptions must be for cause; and second, that any purchaser of such a policy would normally understand, as implied in such terms, that there must be some causal connection without which it would not be meant that any such exception would be applied; and that in order that the policy may be construed as requiring no causal connection between the injury and the exception, the language to that effect must be so clear that there could be no fair opportunity that a policyholder of good intelligence would be misled in that regard, and especially so as to a law violation which in the particular case did not of itself have the effect to substantially increase the risk, and, third, that the exception "while engaged in any violation of law" means a regular engagement therein as in the nature of a business and not a single or casual act, as to which see such cases as Masonic Accident Ins. Co. v. Jackson, 200 Ind. 472, 164 N. E. 628, 61 A. L. R. 840. We do not reach this third proposition, and it is therefore pretermitted, nor as already stated do we have a case wherein the hazard was substantially increased by the particular law violations supported in the proof.

The differences in the language of provisions in policies such as here under consideration, are such as to have produced considerable apparent contrariety of opinion among the courts, but, when all are reviewed, it is our conclusion that the weight of authority is that there must be a substantial causal connection between the violation of law and the injury in order to avoid a policy of this kind for that sole and general reason; and we think the cases support the proposition that if there is to be no such causal connection between the violation and the injury, the language in the policy to that effect must be clear and free from any serious ambiguity. The cases

cited by both sides will be found in the reporter's summaries of the briefs. And compare Columbian Mut. Life Ins. Co. v. Craft, 186 Miss. 234, at pages 246, 247, 185 So. 225.

The daily lives of men in this day and time have become so beset with statute upon statute and regulation upon regulation that the average active person can seldom be quite sure that he is not at a particular time violating some legal prohibition, and few men, if so understanding, would care to be deluded into thinking they had an accident policy if such violations having no causal concern and not seriously increasing the hazard would avoid it. Such a policy would find few takers unless by deceiving them into thinking they had something else.

Inasmuch as the two violations under numerals (1) and (2) foregoing are the only ones proved, and inasmuch as neither of these comes clearly and without ambiguity within the provisions for excluded liability, we are of the opinion that the judgment for the beneficiary was correct and should be affirmed, and it is so ordered.

Affirmed.