369 So.2d 762 (1979)
Mrs. Mary CRUSE
v.
AETNA LIFE INSURANCE COMPANY.
No. 51070.
Supreme Court of Mississippi.
April 18, 1979.
Omar D. Craig, Oxford, William K. Duke, Pontotoc, for appellant.
Mitchell, Rogers, Eskridge, Voge & Clayton, Jeremy J. Eskridge, Tupelo, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
LEE, Justice, for the Court:
Mrs. Mary Cruse filed suit in the Circuit Court of Pontotoc County against Aetna Life Insurance Company seeking the proceeds of two (2) group life insurance policies [five thousand dollars ($5,000) each] issued on the life of her deceased grandson, John David Sewell. The causes were consolidated, the facts were stipulated, and the cases were tried before Circuit Judge Fred Wicker without a jury. The trial judge held that John David Sewell was not covered under the policies and entered judgments for Aetna Life Insurance Company, from which Mrs. Cruse appeals.
*763 John David Sewell, now deceased, began working for Deville Furniture Company (Deville) in Pontotoc, Mississippi, October 11, 1976. On that date, two group policies of insurance between Aetna Life Insurance Company and Deville were in full force and effect. Under the terms of same, any new non-supervisory employees of Deville became eligible for coverage thereunder on the date they completed two months of continuous service.
Sewell worked continuously for Deville from the date of his employment on October 11, through December 9, 1976 (Thursday) at 12:00 noon when he and all the other Deville employees in his department were laid off due to lack of materials. Deville expected the layoff to be temporary and for work to resume on December 13, the following Monday, and knew of no reason why Sewell would not be allowed to return to work on that date.
Around midnight on December 9, 1976, Sewell left the Pontotoc area in a van owned by a corporation other than Deville. He was not in the course and scope of his employment and proceeded to some point on I-55 near Durant, Mississippi where an accident occurred around 5:30 a.m. resulting in his death.
Mrs. Mary Cruse was named beneficiary in the application for insurance filled out by Sewell on October 11, 1976. As such, she made proper claim for benefits but was denied the same by Aetna on the basis that Sewell had not completed two (2) months of continuous service with Deville and, therefore, was not covered by either of the policies. The cases were submitted to the trial judge on the pleadings and stipulations of facts entered into between the parties. The judge ruled that, although Sewell had lived until the date marking the end of two months time (December 10, he had not completed the day's work. He entered judgment for the defendant without considering the effect of the layoff on the requirement that service be continuous for a period of two months.
Appellant assigns five (5) errors committed by the trial judge, but the questions for decision relate to completion of continuous service, completion of work on the date of death, effect of Sewell's temporary layoff on December 9, and provisions of the policies that, if Sewell was away from work and disabled, the policies would be ineffective.

I.
To what date does the phrase, "on the date on which he completes two months of continuous service" refer?
In Hattiesburg Grocery Company v. Tompkins, 111 Miss. 592, 71 So. 866 (1916), the Court discussed the seven-year statute of limitations involving a judgment. The defense argued the suit was barred because the statute had run. It was held that, following the principle of liberality, the day on which the judgment was rendered should be excluded in computing the seven-year period and that the word "next" in the statute emphasized that the first day of the period should be excluded. The cases of Rayl v. Thurman, 156 Miss. 1, 123 So. 853 (1929) and Williams Bros. v. Bank of Blue Mountain, 132 Miss. 178, 95 So. 843 (1923) state similar discussions and factual situations.
The policies in question do not contain phrases appearing in the limitation statutes such as "next after," are not governed by them, and the present case is distinguished from those cases. There is no valid reason why the period should not commence on Sewell's first workday, October 11, 1976.
In Provident L. & A. Ins. Co. v. Jemison, 153 Miss. 53, 120 So. 180 (1929), the policy was effective fifteen (15) days from and after date. It was dated June 18, 1927, and on July 3, 1927, the insured developed an illness in the nature of rheumatism, which he first felt around 9 a.m. The Court held that, in the absence of statute or specific contract provisions to the contrary, the law does not take cognizance of a fraction of a day. Consequently, the day of the policy was counted as a part of the fifteen days and such period expired before July 3.
*764 Under the Jemison rule, the two-month waiting period here was completed on December 10, 1976. We are of the opinion that such period effectively complied with that provision of the policy.

II.
Was Sewell required to complete work on December 10, 1976, before the policy became effective as to him?
Appellee contends that, if December 10, 1976, is the date beyond or at the end of the two-month period, still, Sewell was required to complete his workday on December 10 before he was covered. Appellant takes the position that Sewell did not have to survive the entire day and that any fraction of December 10 was sufficient to invoke coverage.
The trial court decided that the two-month period was encompassed in the dates from October 11, 1976, to and including December 10, 1976, but that Sewell, to be covered, had to work or survive until 12:00 p.m. on that date. However, if December 10 had fallen on a holiday or Sunday, when it is assumed that the plant was not operating, certainly such day would have been included in the two-month period.
Insurance contracts are construed strictly against the company which writes the policy and in favor of the insured. The provision "on the date on which he completes two months continuous service" does not specifically state that Sewell must have completed the last day, either by work or survival. We hold that the fraction of a day sufficed to cover the continuous service provision. See Provident L. & A. v. Jemison, supra. Had the insurance company specified the two-month period concluded at 12 p.m. on the last day, that provision would govern.
We are of the opinion that, although Sewell died at 5:30 a.m. on December 10, he fulfilled the eligibility requirements of the policy.

III.
What effect, if any, did Sewell's lay-off on December 9 have on coverage?
As stated above, Sewell worked the 7:00 a.m. to 3:30 p.m. shift at Deville and, on December 9, which was Thursday, he and the other employees working in the upholstery department were released at noon for lack of materials. It was not uncommon for such an incident to occur and, when shortages arose, employees in the department were laid off without pay until the line resumed production. The upholstery line was to be reactivated on December 13, the following Monday, and Sewell was expected to return to the job that day. The contracts contain the following provisions:
"Article III  TERMINATION OF INSURANCE
Section 1. Employee and Dependent Coverage
All insurance of any employee under this policy shall terminate at the earliest time specified below:
(1) Upon discontinuance of the policy.
(2) Immediately when the employees' employment with a Participant Employer in the classes of employees eligible for insurance terminates. Cessation of active work by an employee shall be deemed to be termination of his employment, except that

(a) in the case of an absence from active work because of sickness or injury, his employment may, for the purposes of insurance under this policy, be deemed to continue until terminated by his Participant Employer but in no case beyond twelve months from the date such absence from active work started, or
(b) in the case of absence of an employee from active work because of temporary lay-off or leave of absence, his employment may, for the purposes of insurance under this policy, be deemed to continue until terminated by his Participant Employer but in no case beyond the end of the policy month following the policy month in which such lay-off or leave of absence commenced.

*765 In the case of any of the exceptions in the foregoing paragraph, the insurance under this policy for such employee shall automatically cease on the date of such termination of his employment by his Participant Employer, as evidenced to the Insurance Company by the Policyholder, whether by notification or by cessation of premium payment on account of such employee's insurance hereunder. Any maximum period of continuation permitted by the foregoing paragraph may be extended by written mutual agreement between the Policyholder and the Insurance Company in each individual case.
In no event may any insurance provided on a contributory basis be continued beyond the end of the period for which the employee has made to his Participant Employer the contributions required." (Emphasis added).
The temporary layoff did not interrupt the two-month period for eligibility under the policy.
We have considered the fourth assignment of error and have determined it to be without merit.
For the reasons stated, the judgment of the trial court is reversed and judgment is rendered here in favor of appellant.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.