605 So.2d 741 (1992)
Philip GUNN
v.
PRINCIPAL CASUALTY INSURANCE COMPANY.
No. 90-CA-0922.
Supreme Court of Mississippi.
June 3, 1992.
Rehearing Denied August 26, 1992.
Michael F. Myers, Steen Reynolds Dalehite & Currie, Jackson, for appellant.
Douglas R. Duke, Shell Buford Bufkin Callicutt & Perry, Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Today's appeal requires that we consider whether Plaintiff's father, mother and sister, none of whom prior to their deaths resided in the household with Plaintiff, were nevertheless "insureds" within the *742 uninsured motorist (UM) coverage of a policy Plaintiff held with the Defendant insurer. The Circuit Court held the father, mother and sister were not "relatives" within the meaning and contemplation of the policy and, therefore, that they were not "insureds," and entered judgment for Defendant.
We affirm.

II.
This civil action has its genesis in a weekend family reunion which the fates marked for unspeakable tragedy. Philip Gunn, Plaintiff below and Appellant here, was a student at the University of Mississippi School of Law nearing the close of the school year. His parents, Dewey Anthony Gunn and Linda B. Gunn, were in Oxford to visit their son, and with them was Philip's sister, Jana L. Gunn. On May 15, 1988, Jana Gunn was driving her father's 1985 Buick LaSabre automobile, in which his mother Linda and father Dewey were riding, when they were struck violently by Howard Eugene Hewlett, a negligent and uninsured motorist. The accident proved fatal to Dewey, Linda and Jana.
In the wake of these untoward events, Philip Gunn first asserted a claim on the uninsured motorist coverage of his father's automobile insurance policy and has recovered $200,000.00. The present record intimates Gunn may have brought "an action against General Motors Corporation and/or others based on the fact that the gas tank exploded after the collision," but we are given no further details, nor is the matter of consequence.
In the Spring of 1988, Philip Gunn owned a 1977 Chevrolet Caprice Classic, and, in connection therewith, Gunn held an automobile insurance policy with and through Principal Casualty Insurance Company, Defendant below and Appellee here. This policy included the customary uninsured motorist coverage, but provided for limits of liability in the amount of $50,000.00 per accident, a coverage in excess of that statutorily required. Gunn's 1977 Chevy was in no way involved in the fatal accident.
On January 25, 1990, Gunn commenced the present civil action by filing his complaint in the Circuit Court of Hinds County, First Judicial District, and claimed damages for the uninsured motorist-caused deaths of his father, mother and sister. He named Principal Casualty as the Defendant, exhibited the UM coverage on his policy, and demanded judgment in the amount of $50,000.00, together with interest and cost. Principal Casualty answered and denied coverage on grounds that the deceaseds  Dewey Gunn, Linda Gunn and Jana Gunn  were not insureds within the policy, for the reason they did not reside in the household of Philip Gunn, a fact all concede.
The matter came before the Circuit Court on cross-motions for summary judgment. On July 27, 1990, the Circuit Court held:
As a matter of law that the policy definition of the term "relatives" controls excluding coverage for relatives who do not live in the home of the named insured.
The Court denied Gunn's cross-motion for summary judgment but then granted Principal Casualty's motion and entered judgment summarily, dismissing finally Gunn's complaint with prejudice.
Gunn now appeals to this Court.

III.
The question before us is whether the legal word "relative" and, (hence, the legal word "insured") within the UM coverage of Gunn's policy on his 1977 Chevrolet Caprice includes his father, mother and sister when they are not residing in the same household with him.
The question calls for a reading of policy language, but, as all know by now, the meaning we may find is substantially affected by statute  our Uninsured Motorist Act. Miss. Code Ann. § 83-11-101 et seq. (Rev. 1991). By law, a UM insurer may not contract for coverage less than that statutorily required. State Farm Mutual Automobile Ins. Co. v. Nester, 459 So.2d 787, 789 (Miss. 1984); Talbot v. State Farm Mutual Automobile Ins. Co., 291 So.2d 699, 701 (Miss. 1974). On the other hand, we *743 have repeatedly recognized that the insurer may provide broader coverage than required by the Act. Brown v. Maryland Casualty Co., 521 So.2d 854, 855 (Miss. 1987); Pearthree v. Hartford Accident and Indemnity Co., 373 So.2d 267, 271 (Miss. 1979). In the end, we integrate the statute into the policy, Aetna Casualty & Surety Company v. Barker, 451 So.2d 731, 732 (Miss. 1984); United States Fidelity and Guaranty Co. v. Stafford, 253 So.2d 388, 391 (Miss. 1971), and give the legal text so assimilated the most coherent meaning its words may bear. See Webster v. Webster, 566 So.2d 214, 215 (Miss. 1990); Mississippi Insurance Guaranty Assn. v. Vaughn, 529 So.2d 540, 542 (Miss. 1988); McIntire v. Moore, 512 So.2d 687, 689 (Miss. 1987).
"Insured" and its component concept, "relative," have no natural law definition in uninsured motorist law. Wickline v. United States Fidelity and Guaranty Co., 530 So.2d 708, 714 (Miss. 1988). Meaning is a function of contract augmented and informed by statute. We begin with the language of the policy. Page one includes a section which defines words or terms used elsewhere. In relevant part, we find:
As used throughout this policy and shown in bold type:
.....
2. Relative means a person living in your home and related to you by blood, marriage or adoption. It includes a ward or foster child.
We then turn to the uninsured/underinsured motorist coverage, Endorsement No. 9902, and, under "INSURING AGREEMENT," find it provided:
"Insured person" as used in this endorsement means:
1. You or a relative.
The word "relative" does not appear in bold face, and Gunn seizes the point, as will presently appear.
As a general proposition, we seek common and ordinary meanings for words upon which rights turn. Wilson v. Wilson, 547 So.2d 803, 805 (Miss. 1989); National Fire Ins. Co. v. Slayden, 227 Miss. 285, 289, 85 So.2d 916, 917 (1956); cf. Miss. Code Ann. § 1-3-65 (1972). Gunn says the word "relative" as a matter of common and ordinary usage includes one's father, mother and sister and, accordingly, that each of these is an "insured" within his policy. But words such as "relative" may, by law, be restricted in scope or given a meaning other than or different from common and ordinary usage, see Davis v. State, 586 So.2d 817, 820 (Miss. 1991); Mississippi State Tax Commission v. Moselle Fuel Co., 568 So.2d 720, 723 (Miss. 1990); McLaurin v. Mississippi Employment Security Commission, 435 So.2d 1170, 1171-72 (Miss. 1983). Gunn concedes the premise, admitting that Principal Casualty could have restricted the definition of "relative" in the policy to persons residing in his home or household, arguing only that it has not done so. Gunn's precise point is that the policy definition of "relative" applies, according to the express terms of the policy, "as used throughout the policy and shown in bold type." Resort to the language of the policy makes clear that, in the UM endorsement, the word "relative" does not appear in bold type.
Principal Casualty argues that this failure of the UM endorsement to include "relative" in bold type is simply a mistake, an innocent inadvertence. No doubt, privately-made legal instruments  contracts, wills, insurance policies, etc.  are subject to reformation in the event of mistake, but the fact of the mistake must be shown by proof. Discovery papers in the record before us reflect that, had the case gone to trial, Principal Casualty contemplated calling as witnesses three members of its Underwriting Department said to have "specific knowledge regarding endorsement 2700." Still, no such knowledge or evidence is before us. We think it likely the mistake theory is correct.[1] On the other *744 hand, UM endorsement 2700 contains other terms which are in bold type, and no reason appears on the face of the document why the term "relative" could not have been so emboldened.
Responding further, Principal Casualty tells us that giving "relative" its common and ordinary meaning would lead to "absurd" results in that this would provide "that all of the insured's relatives, named or unnamed, known or unknown, wherever domiciled, and however related, would be insured."[2] The argument is itself absurd. That there may be doubt on the periphery of the meaning of legal words in no way impedes use of the word to cover cases within its core  here, Gunn's father, mother and sister. Sensible courts pretermit the outer limits until they necessarily appear.
That in a technical sense the policy language precludes our deciding in today's summary judgment context that relative is limited to those who live in the insured's household or home does not necessarily lead us back to the common and ordinary meaning of the word. The policy is written against the backdrop of a statute, which we deem incorporated and make a part of the insuring contract. Aetna Casualty & Surety Company v. Barker, 451 So.2d at 732; Stevens v. United States Fidelity and Guaranty Co., 345 So.2d 1041, 1043 (Miss. 1977). A UM policy may afford coverage broader than the statute mandates, but we think it not unreasonable to hold, where this is to be done, it should be accomplished through language of modest clarity.
We say all of this against the backdrop of a statutory definition of the term "insured." Miss. Code Ann. § 83-11-103(b) (Rev. 1991), in relevant part defines "insured" as including:
The named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, ... .
Because Philip Gunn's father, mother and sister were not "resident of the same household" with Philip, they are not insureds within the meaning of the Act. Because nothing in the policy at issue expands the word "insured" beyond the statutory definition, that definition controls and leaves us no alternative but to deny Gunn's appeal.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, and PITTMAN, JJ., concur.
BANKS, J., not participating.
DAN M. LEE, P.J., dissents with separate written opinion, joined by SULLIVAN and McRAE, JJ.
DAN M. LEE, Presiding Justice, dissenting:
Today's holding says that henceforth ambiguous insurance contracts will be construed against the insured, and in favor of the insurer, when the policy in question purports to exceed minimum statutory levels of coverage, even though the insurance company drafted the instrument found to be ambiguous. Because I believe the majority opinion's finding is contrary to the settled law of Mississippi, I respectfully dissent.

FACTS
The case before us today involves a tragic accident which claimed the lives of plaintiff-appellant Philip Gunn's mother, father, and sister. The deceased lived in Clinton, in the First Judicial District of Hinds County. Appellant Philip Gunn (Gunn) lived in Oxford, where he attended the University of Mississippi School of Law, at the time of the accident.
Jana Gunn was driving her father's automobile on May 15, 1988, and carrying Gunn's mother and father as passengers when the automobile was struck by a vehicle driven by a negligent uninsured motorist. *745 The father, mother, and sister were tragically killed.
Dewey Gunn carried an insurance policy which paid Philip Gunn $200,000 following the accident. Philip Gunn then filed the suit at bar seeking to recover $50,000 from Principal Casualty Insurance Company, grounding the action on an automobile policy issued to Philip Gunn on January 16, 1987.
Gunn sought recovery under the uninsured motorist coverage in his own policy. The circuit court denied a motion for summary judgment filed by Gunn, and granted a motion for summary judgment made by defendant-appellee Principal Casualty. Gunn has appealed this granting of summary judgment.
Gunn claims he should be allowed to recover because his parents and sister were covered insureds under the insurance policy he purchased from Principal Casualty. Principal Casualty denies any liability because the deceased were not residents of the insured's household at the time of their demise.
Page one of Gunn's insurance policy states "as used throughout this policy, and shown in bold type ... relative means a person living in your home and related to you by blood, marriage, or adoption. It includes a ward or foster child." (Emphasis added).
The standard uninsured motorist provision of the insurance policy in question was replaced with Endorsement No. 9902, which provides that "`insured person' as used in this endorsement means: 1. You or a relative. 2. Any other person occupying your insured auto. 3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above."
The word "relative" appeared four times in the endorsement, but was not printed in bold type in the endorsement. Gunn contended below and contends here today that since "relative" is not printed in bold type, the definition given that word on the first page of his policy does not apply, and therefore this court must construe "relative" according to its ordinary meaning.
Appellee contends such a reading of the policy would be absurd, because it would allow Gunn to recover for any injuries to relatives anywhere in the world.

DISCUSSION
A careful reading of the record indicates that the policy, as written, would not have produced as bizarre a result as the insurer would have us believe.
Although it is true that a literal interpretation of the policy would lead to broader coverage than that required by our state's uninsured motorist laws, Sec. 83-11-101 et seq., Miss. Code Ann. (1990 Supp.), this was not true of the policy as it was originally written. When Principal Casualty issued its policy to Gunn in 1987, the policy contained the following exclusion:
We do not provide coverage under this endorsement (No. 9902) for property damage or bodily injury sustained by any person:
1. while occupying or when struck by, any motor vehicle owned by you or any relative which is not insured for this coverage under this policy.
Therefore under the policy as originally drafted, all relatives of Gunn were covered under the uninsured motorist provision as long as the injured relatives were injured in a vehicle insured under the policy; should the relative(s) be injured in a vehicle not so insured, the policy indicated the injuries would not be covered. We conclude that, as originally written, the policy does not provide coverage which seems "absurd" or overly broad; indeed, the coverage would have been more narrow than that allowed by our laws.
Before Gunn's policy was initially issued, the Mississippi Supreme Court had found that a provision equivalent to the one quoted above (exempting accidents caused by vehicles not included in the policy) was void. Lowery v. State Farm Mutual Auto. Ins. Co., 285 So.2d 767 (Miss. 1974). It is not the fault of the appellant Gunn that his insurer chose to include a provision which had already been declared void by *746 our state's highest court, yet today's majority position would penalize Gunn on this basis.
When Gunn renewed his insurance policy, the insurer deleted the void provision and replaced it with a provision which read:
We do not provide coverage under this endorsement for property damage or bodily injury sustained by any person: In any amount greater than the minimum limits of liability required by the Mississippi Financial Responsibility Law if injury and/or property damage occurs while occupying, or when struck by, any motor vehicle owned by you or any relative which is not insured for this coverage under this policy.
The amendment thus purported to limit coverage to the minimum statutory amount required.
Gunn contends that since his premiums were not lowered, yet recovery limits were reduced from $50,000 to $20,000, such an amendment amounts to a nudum pactum, a contract without consideration. The insurer counters by saying that the new language actually broadened Gunn's coverage in that it replaced a provision which provided nothing to an insured injured in a vehicle not covered by its policy with a provision which actually provided up to $20,000 for such an occurrence.
The appellant's logic is the more compelling. The original policy exclusion was void, and without it the insured could collect up to $50,000 when he or a relative were injured; under the amended language, the limit is reduced 60 percent. The insurance company gave up nothing, in that its prior provision was void as a matter of law as the result of the Lowery decision; thus the insurer reduced the coverage without giving a reduction in premiums in return.
The trial court never reached this question, however, having granted summary judgment to the insurer.

"RELATIVE" DEFINED
The court must now determine the meaning of the term "relative" as employed in the contract of insurance. On page one of the policy, it states that the subsequent definitions given to words apply "as used throughout this policy and shown in bold type." This could be read two ways: either the terms so used retain their given definitions anywhere they are used in the policy; or the words retain such definitions only if they appear in the policy and also are printed in bold type. This created an ambiguity. It is thoroughly settled law in Mississippi that an ambiguity in an insurance policy is to be strictly construed against the drafter, because the drafter is the party in a position to correct the ambiguity:
It must be borne in mind that the policy in question was prepared by the appellant and we are at once confronted with the principle of law that where a policy of insurance is prepared by the insurance company its terms must be considered most favorably toward the insured and especially that provisions of doubtful meaning must be construed most strongly toward liability. In the case of Interstate Life and Accident Company v. Waters, 213 Miss. 265, 272, 56 So.2d 493 [1952], we quoted with approval from Southern Home Insurance Company v. Wall, 156 Miss. 865, 127 So. 298, 299 [1930] as follows: "In construing the provisions of a contract of insurance, all the provisions of the policy must be so construed, if it can be reasonably done, so as to give effect to each. Where the policy is subject to two interpretations, equally reasonable, that which gives the greater indemnity to the insured will prevail ... In all cases the policy must be liberally construed in favor of the insured, in order to accomplish the purpose of the insurance."

In the case of New York Life Insurance Company v. Nessossis, 189 Miss. 414, 426, 196 So. 766 [1940], we quoted with approval from Columbian Mutual Life Insurance Company v. Craft, 186 Miss. 234, 185 So. 225 [1939] as follows: "As respects a feature wherein there is no practical difficulty in making the language plain and free from doubt, we are in accord with the remark found in Turner *747 v. Fidelity, etc., Company, 112 Mich. 425, 70 N.W. 898, 38 L.R.A. 529, 67 Am.St.Rep. 428, that (")a policy or certificate of insurance `should be framed with such deliberate care that no form of expression by which, on the one hand, the party assured can be caught, or by which, on the other, the company can be cheated, should be found on the face of it' and the only effective way to foster that result is to construe any doubtful provision against the company .. . which prepared and put forth the policy."
Lumbermens Mut. Cas. Co. v. Broadus, 237 Miss. 387, 392-93, 115 So.2d 130, 74 A.L.R.2d 1248 (1959) (emphasis added).
As in Broadus, the court today is faced with a situation where "no reason appears on the face of the document why the term `relative' could not have been so emboldened."
The reasoning in Broadus is that if courts penalize sloppy draftsmanship, sloppy draftsmen would have an incentive to clean up the language of the documents they draft. Insurance companies would have an incentive to make their insurance contracts clear and free of ambiguities. Today's majority goes entirely in the opposite direction, first professing the belief that an insurer offering coverage broader than statutorily mandated minimums should do so "through language of modest clarity," and then offering an inconsistent rule. It remains unclear how the removal of a penalty against sloppy draftsmanship would bring about an improvement in the drafting of insurance contracts.
"(S)ince these policies are usually prepared by the insurer, the construction is to be made most strongly against the insurer in favor of the assured." Boyd v. Mississippi Home Ins. Co., 75 Miss. 47, 21 So. 708 (1897).
"It is a familiar rule of construction of contracts, and especially insurance contracts, that they are construed most strongly against the party drafting the contract, and most favorably to the policyholder." Mutual Ben. Health & Acc. Ass'n v. Blaylock, 163 Miss. 567, 573, 143 So. 406, 87 A.L.R. 679 (1932).

STATUTORY DEFINITION CONSIDERED
"The parties have a right to make a contract of insurance binding upon them, and however stringent they may be, if not opposed to some public policy or statute, they will be enforced as written, although such contracts are construed strictly against the insurer." New Amsterdam Cas. Co. v. Perryman, 162 Miss. 864, 871, 140 So. 342 (1932).
In the instant case, the Legislature defined the word "insured", and the majority seizes upon such definition as conclusive of the intent of the two parties to the disputed insurance contract. Sec. 83-11-103(b), Miss. Code Ann. (1972). We point out that the term "insured" is defined "As used in this article." Sec. 83-11-103. From the language chosen by the Legislature, we conclude its intention was to define the word "insured" only as it is used in the statute, and not as it is used by two private parties entering into a contract.
Gunn argues that the insurance policy should be construed according to the language chosen by the drafter, the insurer; and that when an ambiguity arises, such ambiguity should be strictly construed against the drafting party. This tracks the law of our state.
"Parties to a contract have the right to assume or not assume certain risks, and we must enforce contracts as they are written, unless they are contrary to the law of the state or to some public policy." Lavender v. Volunteer State Life Ins. Co., 171 Miss. 169, 182, 157 So. 101 (1934).
"Insurance contracts are construed strictly against the company which writes the policy and in favor of the insured." Cruse v. Aetna Life Ins. Co., 369 So.2d 762, 764 (Miss. 1979).
"(I)t is a well-established rule of construction that whenever there is an ambiguity in a policy of insurance, it is construed strictly against the insurance company which drafted the contract. Mississippi *748 Ben. Ass'n v. Majure, 201 Miss. 183, 29 So.2d 110 (1947); Great American Ins. Co. v. Bass, 208 Miss. 436, 44 So.2d 532 (1950)." Evana Plantation, Inc. v. Yorkshire Ins. Co., Ltd., 214 Miss. 321, 325, 58 So.2d 797 (1952). See also Government Employees Ins. Co. v. Brown, 446 So.2d 1002 (Miss. 1984); Brander v. Nabors, 443 F. Supp. 764, aff'd, 579 F.2d 888 (N.D.Miss. 1978); Pritchard v. Insurance Co. of North America, 61 F.R.D. 104 (N.D.Miss. 1973); Farr v. Sun Life Assur. Co. of Canada, 351 F. Supp. 299, aff'd 469 F.2d 1392 (N.D.Miss. 1972); America Southwest Corp. v. Underwriters at Lloyd's, London, 333 F. Supp. 1333 (S.D.Miss. 1971); English v. Insurance Co. of North America, 270 F. Supp. 713, aff'd 395 F.2d 854 (N.D.Miss. 1967); Employers Ins. of Wausau v. Trotter Towing Corp., 834 F.2d 1206, rehearing denied, 841 F.2d 633 (5th Cir.1988); Patton v. Aetna Ins. Co., 595 F. Supp. 533 (N.D.Miss. 1984); Reece v. State Farm Fire & Cas. Co., 684 F. Supp. 140 (N.D.Miss. 1987).
In summary, we have determined that Gunn's insurance policy should be interpreted according to its own terms, as far as is possible, and any ambiguities should be strictly construed against the drafter. The policy thus provided Gunn with coverage for the accident which claimed the lives of his parents and his sister.
The lower court did not reach the secondary issue, that of the amount of uninsured motorist coverage Gunn actually had at the time of the deaths, and so this question is not before us today. Cossitt v. Federated Guarantee Mutual Insurance Co., 541 So.2d 436 (Miss. 1989); Educational Placement Services v. Wilson, 487 So.2d 1316 (Miss. 1986). However, we would remind the participants that if a mistake is found in the language included in a policy of insurance, and if that policy was drafted by the insurer, the insurance company would not be entitled to reformation under most circumstances. "The general rule in this state and elsewhere is that reformation of a contract is justified only (1) if the mistake is a mutual one, or (2) where there is a mistake on the part of one party and fraud on the part of another." Johnson v. Consolidated American Life Ins. Co., 244 So.2d 400, 402 (Miss. 1971).

CONCLUSION
Thus, we should reverse the granting of summary judgment by the trial court and remand for trial on all issues. To hold otherwise would be to penalize the appellant because the insurance company (1) used ambiguous language applying definitions to terms in the policy; (2) failed to print the term "relative" in bold type in Endorsement No. 9902; and (3) incorporated a void clause in the contract it drafted and presented to its insured. This we are not prepared to do.
SULLIVAN and McRAE, JJ., join this dissent.
NOTES
[1] As a matter of custom, UM insurers employ policy language limiting "relatives" to those living in the home with the named insured. See, e.g., Papa v. Mississippi Farm Bureau Casualty Ins. Co., 573 So.2d 761, 762 (Miss. 1990); Gillespie v. Southern Farm Bureau Casualty Ins. Co., 343 So.2d 467, 470 (Miss. 1977).
[2] See In re Guardianship of Jefferson, 573 So.2d 769, 772 fn. 2 (Miss. 1990).