PARKER, Circuit Judge,
concurring in part, dissenting in part:
COVERAGE AS TO JOHN THOMSON
In granting American Guarantee summary judgment, the district court found that there was no ambiguity as to the designation of premises and held that VAS was not a premises designated by the policy’s endorsement. The district court also held that John Thomson’s acts were outside the scope of his employment and thus he was not insured under the terms of the policies. The majority affirms the first conclusion and declines to reach the second. I would hold that the policy is ambiguous as to the designation of premises, and that the VAS premises is within the policy’s coverage. However, because I believe that the district court was correct in holding that John Thomson’s acts were outside the scope of his employment, I concur with the affirmance of the district court’s decision that John Thomson was not insured under the policy.
a. Designated Premises
There are no premises listed on the policy’s endorsement. The endorsement instructs that if there is no entry as to designated premises, “information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.” The Declarations page lists three properties which are followed by the limits on property coverage liability. There is no reference to the designated premises endorsement nor is there any reference to these premises being designated premises for purposes of liability limitation.
The question presented as to this issue is whether the listing of these three property addresses together with limits on property coverage are to be read as also serving as a list of designated premises for purposes of the discussed endorsement. A district court’s interpretation of an insurance policy is a question of law which we review de novo. Boatner v. Atlanta Speciality Ins. Co., 115 F.3d 1248, 1251 (5th Cir.1997). An insurance policy is a contract and as such, we turn to contract construction principles. When construing a contract, the contract is read as a whole, so as to give effect to all of its clauses. Brown v. Hartford Ins. Co., 606 So.2d 122, 126 (Miss.1992); Gunn v. Principal Casualty Ins. Co., 605 So.2d 741, 746 (Miss.1992). Viewing the endorsement in light of this rule, we must give meaning to its phrase “as applicable to this endorsement.” We may not simply read it out of the contract.
Two reasonable interpretations are possible when reading the endorsement and declarations page together. The endorsement was never completed with the designation of any premises in the appropriate areas indicated on the endorsement and there is no reference to any designation of premises “applicable to [the] endorsement” on the declarations page, leading to the reasonable conclusion that no list of premises was included in the contract to which coverage was limited. A second plausible interpretation is urged by American Guarantee and adopted by the majority — that the property addresses listed on the declarations page serve as the designated premises for purposes of the endorsement since the endorsement refers the reader to the declarations page and on the declarations page there is a list of some properties. An ambiguity is defined as a susceptibility to two reasonable interpretations. Ins. Co. of No. Am. v. Deposit Guaranty Nat’l Bank, 258 So.2d 798, 800 (Miss. *812 1972). I would find the designated premises portion of the contract ambiguous.
In the case of an ambiguity in an insurance policy, it has long been established that resolution of the ambiguity must be in favor of the insured. New Hampshire Ins. Co. v. Robertson, 352 So.2d 1307, 1311 (Miss.1977).
In construing the provisions of a contract of insurance, all the provisions of the policy must be so construed, if it can be reason? ably done, so as to give effect to each. When the policy is subject to two. interpretations, equally reasonable, that which gives the greater indemnity to the insured will prevail.... In all cases the policy must be liberally construed in favor of the insured, in order to accomplish the purpose of the insurance.
Gunn, 605 So.2d at 746 (quoting Southern Home Ins. Co. v. Wall, 156 Miss. 865, 127 So. 298, 299 (1930)). Following this long-established rule of contract construction, I would construe the ambiguity against American Guarantee and find that the policy lacks a designation of premises to which coverage was limited and thus find that the endorsement does not preclude coverage for the VAS premises.
Having determined that the policy did not designate particular 1906 Company premises to which coverage was limited[1], I must then determine if coverage is precluded for other reasons.
b. Scope of employment
Under “Section II — Who is an Insured”, coverage is excluded for acts by employees not “within the scope of their employment.” The district court considered a number of Mississippi cases dealing with the scope issue and found that John Thomson’s secret videotaping of the women in the dressing room was not within the scope of his employment and thus no coverage was available under the policy for John Thomson’s liabilities.
Mississippi cases have established that the proper inquiry in determining whether tor-tious acts were within the scope of employment is to ask whether a servant was acting in furtherance of the employer’s business by engaging in the activity or whether the employee was engaged in a private purpose. Holliday v. Pizza Inn, Inc., 659 So.2d 860, 865 (Miss.1995). We are called upon to make an Erie guess as to whether or not John Thomson was acting within the scope of his employment. See Nautilus Ins. Co. v. Zamora, 114 F.3d 536, 538 (5th Cir.1997).
This case does not resemble the Mississippi “deviation” cases in which the servant deviated from the master’s business and his tortious acts were thus outside the scope of his employment. See, e.g., Seedkem South, Inc. v. Lee, 391 So.2d 990, 995 (Miss.1980); Lovett Motor Co. v. Walley, 217 Miss. 384, 64 So.2d 370, 372-73 (1953); Stovall v. Jepsen, 195 Miss. 115, 13 So.2d 229, 230 (1943). John Thomson did not leave his place of employment and he performed the same acts as he always did at VAS albeit without the permission of the photographic subjects. Rather, the decisive fact in this case was that John Thomson was videotaping the undressed women without their permission and was clearly serving his own purpose in that respect. That aspect of the activities indicates that the videotaping was for John Thomson’s own purposes.
The Mississippi Supreme Court has explained that the determination of whether an act was within the scope of employment rests on the employee’s purposes in his tortious activity. “[T]he decisive question is not whether the servant was acting in accordance with the instructions of the master, but, was he at the time doing any act in furtherance of his masters’ [sic] business. If a servant, having completed his duty to- his master, then proceeds to prosecute some private purpose of his own, the master is not hable.” Holliday, 659 So.2d at 864-65 (quoting Barmore v. Vicksburg, S & P R.R. Co., 85 Miss. 426, 38 So. 210, 212 (1905)). The Mississippi Supreme Court has in effect refocused the scope and coverage inquiry to the question of the employee’s purposes.
The inquiry is not, whether the act in question, in any case, was done, so far as time is concerned, while the servant was en *813 gaged in the master’s business, nor as to mode or manner or doing it, — whether in doing the act he uses the appliances of the master, — but whether, from the nature of the act itself as actually done, it was an act done in the master’s business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account.
Holliday, 659 So.2d at 864 (quoting Canton Cotton Warehouse Co. v. Pool, 78 Miss. 147, 28 So. 823, 824 (1900)). I agree with the district court that coverage for John Thomson is precluded under the policy because his acts were outside the scope of his employment as they were for his own personal purposes. I therefore concur with the majority that the policy affords no coverage for John Thomson.
COVERAGE FOR RICHARD THOMSON AND THE 1906 COMPANY
Since I have concluded that John Thomson acted outside the scope of his employment, there can be no vicarious liability for Richard Thomson and the 1906 Company. Consequently, the policy affords no coverage for Richard Thomson and the 1906 Company for claims of vicarious .liability for John Thomson’s tortious acts.
We are then left with the direct claims against Richard Thomson and the 1906 Company predicated on their own actions, including, inter alia, negligent entrustment, negligent supervision and negligent hiring. The policy contains a “separation of insureds” provision that instructs that the insurance applies “[a]s if each Named Insured were the only named Insured” and that it applies “[separately to each insured against whom claim is made or ‘suit’ is brought.” The majority relies on cases holding that where liability premised on negligence is interdependent with other tortious activities, the determining issue for coverage purposes is whether the tortious activities themselves are encompassed by the “occurrence” definition. See, e.g., Cornhill Ins. PLC v. Valsamis, Inc., 106 F.3d 80, 87 (5th Cir.1997) (applying Texas law). These cases involve neither Mississippi law nor the consideration of separation of insureds provisions. As a court sitting in diversity, we are obligated to do as we believe the Mississippi Supreme Court would think best. See Zamora, 114 F.3d at 538. The Mississippi Supreme Court has made no suggestion of following the way of the “Com-hill-type” cases. Under Mississippi law, “the keystone of the occurrence definition is that the event giving rise to the claim should be neither expected nor intended from the standpoint of the insured.” U.S. Fidelity & Guaranty Co. v. T.K. Stanley, Inc., 764 F.Supp. 81 (S.D.Miss.1991). A leading treatise offers a similar definition: “the act is an accident if- it was unexpected or unanticipated from the standpoint of the insured.” Couch on Insurance 2d (rev. ed.) § 41:14, at 20-21. One district court has explained the proper approach.
“The test of whether an injury is the result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury.” Mohn v. Am. Casualty Co., 458 Pa. 576, 326 A.2d 346 (1974). Obviously, from the standpoint of [the employer], [the employee]’s acts were “unexpected or unanticipated.” It would require a tortured interpretation of this case to decide that when [the employer] hired [the employee] it intended or expected that he would molest children.
Silverball Amusement, Inc. v. Utah Home Fire Ins. Co., 842 F.Supp. 1151, 1157-58 (W.D.Ark.) (considering a policy’s definition of “occurrence” virtually identical to the one in policy at hand), aff'd, 33 F.3d 1476 (8th Cir.1994). I remain mindful of the long-established rule of Mississippi contract construction that directs that ambiguities be resolved against the insurer. Gunn, 605 So.2d at 746. As there is no allegation that the 1906 Company or Richard Thomson expected or intended to injure the plaintiffs in the underlying state suits, the policy’s definition of “occurrence” does not preclude coverage for either of these two appellants.
CONCLUSION
I concur with the majority’s determination that the policy in question affords no coverage to John Thomson or VAS, although I reach that conclusion by a different route. I *814 further concur that the issues under Coverage B of the policy as well as the question of attorney fees should be remanded to the district court for further consideration.
However, I dissent from the majority’s determination that the policy afforded no coverage to Richard Thomson and the 1906 Company'under the separation of insureds clause. Because the district court found that American Guarantee had no obligations under its policy, it found no basis for General Star’s claim for indemnity for the payments it had made on behalf of Richard Thomson and the 1906 Company. Because I would hold that American Guarantee was indeed obligated to Richard Thomson and the 1906 Company under its policy, I would also remand General Star’s indemnity claim to the district court for a determination of the amount of American Guarantee’s indemnity obligation to General Star.

. I posit no position on the majority’s discussion of causal connection, as my resolution of the designated premises question renders the issue irrelevant.