This appeal from the Chancery Court of Lauderdale County raises the question of whether a limitation of liability clause in an insurance contract providing uninsured motorist coverage on two automobiles permits aggregation of the coverage to determine the liability of the insurer. The controversy arose when James Fannin and Patricia Ann Shumate, insureds under policies issued by Hartford Accident Indemnity Company (Hartford) and United States Fidelity Guaranty Company (USFG), died in an automobile accident caused by the negligence of Fred M. Lofton, an uninsured motorist. Following the accident, Hartford and USFG paid a combined total of $30,000 for the benefit of certain family members, excluding Dianne Simmons Pearthree, daughter of Patricia Shumate, deceased.
Dianne Pearthree sued Hartford and USFG. At the conclusion of the trial the *Page 269 
chancellor cited three reasons for denying recovery under the policies issued by Hartford and USFG: (1) she could not aggregate the uninsured motorist coverage; (2) she was not an "insured" under the policies; and (3) she was in any event estopped from bringing her action by failing timely to notify the insurers of her demands. Dianne Pearthree appealed, arguing that none of these reasons is legally sufficient to support the chancellor's decision. We reverse.
It was stipulated, as a result of the death of appellant's mother, appellees each made payments in good faith to satisfy their obligations under the uninsured motorist coverage of their respective policies. Hartford paid: (a) $9,900.00 to Eleanor M. Fannin for personal injuries sustained by her in the accident; (b) $10,000.00 to Paul Kelly Loyacono, attorney, and Eleanor Fannin, individually, and as guardian of three minor children, for the death of the named insured, James Fannin; (c) $100.00 to Paul Kelly Loyacono, attorney, and Edwin Earl Shumate, Sr., individually, and as guardian of Barbara Ellen Shumate and Edwin Earl Shumate, Jr., for a covenant not to sue as a result of the death of Patricia Simmons Shumate. USFG paid $10,000.00 to Paul Kelly Loyacono, attorney, and Edwin Earl Shumate, Sr., individually, and as guardian of Edwin Earl Shumate, Jr., Barbara Ellen Shumate, and Darrell Veston Simmons, Jr., for the death of Patricia Simmons Shumate. Appellees paid these amounts in late 1975 or early 1976, the "settlement" represented by the payments on behalf of the minor children having been approved by the Chancery Court of Lauderdale County.
 I.
The central question on appeal is whether the lower court erred in holding the limits of liability under the uninsured motorist clause of the policies issued by USFG and Hartford each were $10,000 for any one person and $20,000 for any one accident rather than $20,000 for any one person and $40,000 for any one accident. This question encompasses appellant's first three assignments of error. In essence, it asks whether the construction of insurance contracts laid down in HartfordAccident Indemnity Co. v. Bridges, 350 So.2d 1379 (Miss. 1977), should be applied to the policies in this case to permit aggregation of the uninsured motorist coverage to determine the outer limits of the liability of the insurers.
The limits of liability provision found in the USFG policy follows:
 Limits of liability
 (a) The limit of liability for Uninsured Motorist (Family Protection) Coverage stated in the declaration as applicable to "each person" is the limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as a result of any one accident.
The limiting provision in the Hartford policy and the parallel provision in Bridges, supra, read identically in all material respects.
In Bridges, supra, the uninsured motorist coverage contained in one policy of insurance insured three automobiles, a separate premium being charged and paid on each automobile. This Court stated:
 After carefully examining the policy in question as a whole and especially the limits of liability provision of the contract, we find ourselves in agreement with the trial judge in the holding of the Alabama Court in Jackson [Employers Liability Assurance Corp., Ltd. v. Jackson, 277 So.2d 806 (Ala. 1972)] that the limits of liability clause in this policy is ambiguous and must be construed most strongly against its creator. This being true, the trial court was correct in holding that the uninsured motorist coverage provided for in this policy could be aggregated and stacked to the extent of the damage suffered by the insured. (350 So.2d at 1381-82). *Page 270 
We also think that charging a separate premium would not necessarily determine the propriety of aggregating, although it is an element to be considered with other aspects of the case. Presently USFG charged separate premiums for uninsured motorist coverage on each of the two automobiles covered by its policy and thus clearly comes within the construction announced in Bridges
permitting aggregation. It is not clear whether Hartford charged separate premiums for the uninsured motorist coverage it provided on two automobiles, but, as we have said, the charging of separate premiums is not decisive. We are of the opinion that a construction permitting aggregation flows from the ambiguity of the limiting clauses in the policies covering more than one automobile, not from the charging of separate premiums.
Both Hartford and USFG argue that Bridges should not be applied "retroactively" to permit stacking. Their argument calls for a review of two earlier analogous cases in which this Court construed contracts of insurance providing uninsured motorist coverage pursuant to Mississippi Code Annotated Section 83-11-101
(1972).
In Southern Farm Bureau Casualty Insurance Co. v. MaryRoberts, Guardian of the Estate of Drexell Ray Roberts, a Minor,323 So.2d 536 (Miss. 1975), separate policies on three automobiles had been issued, each containing an uninsured motorist endorsement for which a separate premium was charged for each automobile. We stated at 323 So.2d 538: "[T]he insurer was paid a separate premium for each policy, the same as if there were three separate policies issued by three separate insurance companies." We distinguished the decision from Talbot v. StateFarm Mutual Automobile Insurance Co., 291 So.2d 699 (Miss. 1974), by pointing out that Talbot involved but one insurance policy with one uninsured motorist endorsement covering four automobiles. The separate policies involved provided so obvious a basis for distinguishing Talbot that there was no need inSouthern Farm Bureau, supra, to look for additional demarcations.
However, there were other bases of distinguishing Talbot and we addressed one of these in Bridges by stating the limitation of liability clause in Talbot, unlike that in Bridges and this case, unambiguously limited the insurer's uninsured motorist liability to "`the minimum limits required by the Uninsured Motorist statute. . . .'" 350 So.2d at 1381. The variation between the limitation of liability clause in Bridges
and in the present case and in Talbot renders specious appellees' argument that the stare decisis value of Talbot
created some sort of "property right" that "retroactive" application of the construction employed in Bridges would impair. Assuming the construction in Bridges is proper, no "property rights" are in any way retroactively impaired, in our opinion, because ambiguous contracts are subject to judicial construction to determine the present rights and obligations of the parties to the contract. We think enforcement of a contract so construed necessarily follows; otherwise there would be little, if any, point in having the contractual rights and obligations determined. To follow the constructional approach ofBridges would serve the rationale of Bank of Philadelphia v.Posey, 130 Miss. 825, 95 So. 134 (1923), not undermine it.
Further, application of Bridges to a materially equivalent
limitation clause should not surprise any insurer. In Bridges
we carried the reasoning of Southern Farm Bureau one step further by holding that payments under a single policy providing uninsured motorist coverage for more than one automobile would have the same effect as payments under several policies with respect to aggregation or stacking when the limitation clause isnot found to be unambiguous. As we have said, "[t]he courts of this State have consistently held that ambiguity and doubt in policies be resolved against the writer of the policy, the insurance company, and in favor of the insured. State FarmMutual Automobile Insurance Co. v. Taylor, 233 So.2d 805 (Miss. 1970)." 350 So.2d at 1381. In our opinion the construction employed in Bridges applies to both the Hartford and USFG policies, inasmuch *Page 271 
as we determine the charging of separate premiums to be without decisional significance in the face of multiple automobile coverages under ambiguous limitation clauses.
 II.
The question of whether appellant is an "insured" under the Hartford and USFG policies remains. The Hartford policy defines an insured as:
 (1) The named insured as stated in the policy (herein also referred to as the principal named insured) and any person designated as named insured in the schedule, and while residents of the same household, the spouse of any such named insured and relatives of either;
 (2) Any other person while occupying an insured automobile, and
 (3) Any person, with respect to damages he is entitled to recover because of bodily injury to which this endorsement applies sustained by an insured under (1) or (2) above. The insurance applies separately with respect to each insured, but the application of the insurance to more than one insured shall not operate to increase the limits of the company's liability.
The policy issued by USFG explains an insured as:
 (a) The named insured and any relative;
 (b) Any other person while occupying an insured automobile;
 (c) Any person with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above. The insurance afforded under Part IV applies separately to each insured, but the inclusion herein of more than one insured shall not operate to increase the limits of the Company's liability.
Focusing upon the words "damages he is entitled to recover" in subdivision (3) of the Hartford policy and in subdivision (c) of the USFG policy, it is obvious the reference is to the same right arising under the applicable law of torts. Because the appellant would under Mississippi Code Annotated Section 11-7-13
(1972) be "entitled" to maintain a wrongful death action for the death of her insured mother, it is beyond cavil, we think, that she too is an "insured" within the meaning of the Hartford and USFG policies. Lowery v. State Farm Mutual Automobile InsuranceCo., 285 So.2d 767 (Miss. 1973), is inapposite, because it dealt with only the meaning of the term "insured" under what is now Mississippi Code Annotated Section 83-11-103 (1972). Here Hartford and USFG chose to define "insured" more broadly under the explicit terms of their policies and should not be permitted the benefit of any narrower definition employed by the statute.
 III.
The policies of Hartford and USFG contain the following language:
 To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called bodily accident and arising out of the ownership, maintenance or use of such uninsured automobile. . . . (Emphasis added).
Appellant argues that she is entitled to recover from appellees as an "insured" under the policies, and also as the "legal representative" of her mother. She contends the phrase "legal representative" should not be construed as in the law of decedents' estates, but instead should be interpreted to further the underlying purpose of Section 83-11-101 which states in part:
 No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle. . . . . (Emphasis added). *Page 272 
The term "legal representative" means the same as "personal representative." Hill v. James, 175 So.2d 176 (Miss. 1965). Appellant did not qualify as a "personal representative" in the sense of an executrix or administratrix, insofar as she opened no estate for her deceased mother and obtained no court appointment. Under these circumstances, we decline to follow the suggested lead of the courts in Sterns v. MFA Mutual Insurance Co.,401 S.W.2d 510 (Mo. App. 1966), and Zeagler v. Commercial UnionInsurance Co. of New York, 166 So.2d 616 (Fla.App. 1964). We hold that because appellant is neither executrix or administratrix of her mother's estate, she may not be viewed as two "persons" under the policies for limitation of liability purposes — (1) an insured in her own right, and (2) a "legal representative" of her mother, Patricia Shumate, also an "insured" within the meaning of both policies. We think she may recover as an insured under the two policies, but only to the extent of the aggregated per person limits, assuming her damages reach those limits. We express no opinion as to whether appellant could recover as a "legal representative" of her mother had she qualified as executrix or administratrix.
 IV.
Appellees' remaining arguments are varied. They urge that appellant did not have standing to bring an action directly against them upon the contracts. However, because the argument that appellant is not an insured fails, this argument of no standing fails also. As appellant correctly observes, in Rampyv. State Farm Mutual Automobile Insurance Co., 278 So.2d 428
(Miss. 1973), we held that one otherwise entitled to sue the insurer on the contract need not first sue the defaulting motorist in order to be accorded standing.
Appellees also argue that the settlement made with other family members discharged their liability because those payments were consistent with the "facility of payments" clause designating proper recipients of settlement money. But since the central controversy involves the limits of liability, which greatly exceeded the payments made to other family members, this argument lacks merit. USFG contends, however, that in Hale v. State FarmMutual Insurance Co., 225 Tenn. 620, 474 S.W.2d 905 (1972), it was held that the plaintiffs could not maintain an action against the insurer because it had completely fulfilled its obligation
under the uninsured motorist coverage by paying the full amount of coverage to the estate of the deceased. However, the present problem is not only that of determining whether the amount paid was to the right persons, but also whether the correct amount was paid. Similarly, Williams v. Williams, 23 Ariz. App. 191,531 P.2d 924 (1975), is not in point. As appellant states, "Williamsv. Williams, . . . dealt with the issue of whether . . . a person receiving uninsured motorist benefits held these benefits as trustees to be distributed according to the Wrongful Death Statute of Arizona." We agree that if the companies had completely discharged their liability under the policies, then the recipients of the $10,000 paid by USFG would have held part of these funds in trust for the appellant. However, this is not the present issue since the appellant is requesting the appellees to pay the balance of coverage available under the terms of its policy.
 V.
The chancellor gratuitously held that even if appellant were entitled to aggregate damages to determine the policy limits her recovery would be limited to 20% of the total amount payable. This was error. The policies mention no percentage limitation. Referring to the wrongful death action, Mississippi Code Annotated, Section 11-7-13 (1972) states:
 In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all damages of every kind to the decedent and all damages of every *Page 273 
kind to any and all parties interested in the suit. (Emphasis added).
The statute also states:
 The action for such damages may be brought . . . in the name of a child for the death of a parent. . . .
Whether other family members might have an equitable right to an aliquot share of any recovery to which appellant be entitled is a separate matter not now before this Court.
 VI.
On the issue of estoppel, we need only say appellant was not estopped, because appellees cannot have been unjustly injured by failing to pay what they legally owed. In the absence of a clear showing of detrimental reliance, cases such as Martin v.Franklin, 245 So.2d 602 (Miss. 1971), and In re Stoball'sWill, 50 So.2d 635 (Miss. 1951), are not controlling.
 VII.
This brings us finally to appellant's assignment of error which states that "[t]he lower court erred in overruling appellant's motion to amend her pleadings to conform to the proof established at trial." This assignment may be disposed of with reference to the familiar principle that amendment even after trial to bring the pleadings into conformity with the proof should routinely be granted where variance between the proof and the pleadings creates no objectionable surprise. Metcalfe v. McCutchen,60 Miss. 145, 153 (1882); Griffith, Mississippi Chancery Practice, § 396 at 385 (2d ed. 1950). In light of this principle, and considering the failure of appellees to attack the amendment issue in their briefs, we see no reason why appellant should not be permitted to amend her pleadings to cure the variance.
In conclusion, we reverse and remand this cause to the Chancery Court of Lauderdale County for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.