451 So.2d 731 (1984)
AETNA CASUALTY & SURETY COMPANY
v.
Dorothy A. BARKER.
No. 54137.
Supreme Court of Mississippi.
May 16, 1984.
Cary E. Bufkin, Jim Bullock, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, for appellant.
Bill Waller, Sr., Waller & Waller, Doug Wade, Jackson, for appellee.
Before WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, J.
BOWLING, Justice, for the Court:
This appeal involves the interpretation of uninsured motorist provisions in an automobile liability insurance policy. The primary question is whether the policy provisions conform to the requirements of the uninsured motorist statutes and the resulting interpretation of the policy provisions. A brief statement of the undisputed facts is necessary.
The case was tried without a jury by a judge of the Circuit Court of the First Judicial District of Hinds County. The *732 facts presented revealed that one Jerry W. Bridges owned a 1976 Chevrolet Camaro automobile. Bridges had purchased a policy of liability insurance with appellant, Aetna Casualty and Surety Company, listing the Camaro as the only insured vehicle. Bridges also owned a motorcycle that was not listed on the insurance policy in question and was not insured under any other policy issued by any other company.
On July 24, 1980, the insured Camaro was inoperable because of a mechanical condition. In order to have transportation, Bridges chose to operate his uninsured motorcycle. At the time of the incidents related herein, he was operating the motorcycle and had as a passenger thereon Pamela Burkett, a female who was living with Bridges, but was not his wife or related to him in any manner. The motorcycle, with its two occupants, was involved in a collision with an admitted uninsured motorist. Bridges was injured and Burkett was killed. Admittedly, the collision was caused solely by the negligence of the uninsured motorist.
Appellant, Aetna, paid full uninsured motorist provision benefits to Bridges under the above described policy. The insurance company refused to pay under the uninsured motorist provision of the policy any money to Burkett's heirs or legal representatives. This suit is by the statutory beneficiary of Pamela Burkett, deceased, for uninsured motorist benefits. The trial judge held that they were entitled to protection and payment under the uninsured motorist provisions of the policy and the applicable statutes and rendered a judgment for appellee. Appellant Aetna contends that under the facts stipulated, Burkett was not covered under the policy's uninsured motorist coverage. We agree with Aetna and reverse and render the cause.
Both parties rely on the case of Lowery v. State Farm Mutual Automobile Ins. Co., 285 So.2d 767 (Miss. 1974). There the court through Justice Rodgers set out an extensive discussion regarding coverage under the uninsured motorist provisions where the claim arose out of the operation of a vehicle not listed in the policy. In Lowery, the named insured in the liability policy had a minor son living in his household. The son was injured when he was driving a motorcycle, owned by him personally, with the motorcycle not being listed under any insurance policy. As here, the minor was injured admittedly by the negligence of an uninsured motorist. Under the terms of the father's policy insuring the father's personal automobile, the claim of the son for his injuries was excluded. We held that this exclusion did not apply as the statutes [Mississippi Code Annotated, Sections 83-11-101 through 103 (Supp. 1983)], were contrary to the terms of the insurance policy and required coverage for the named insured's son under the uninsured motorist provision, even though the son was operating an uninsured motorcycle owned by him personally.
Recognizing the difficulty in interpreting the policy provisions in the case sub judice, the primary question raised below and the primary question now before us is whether or not Burkett, at the time she met her death, was riding in a "temporary substitute automobile" as authorized under the policy provisions and thereby covered under the terms of Bridges' policy.
As hereinbefore stated, Bridges was paid. The policy provision "temporary substitute automobile" did not apply to him. He would have been covered under his personal policy had he been standing in the middle of the street and struck by an uninsured motorist's vehicle. The statutes and authorities are clear that there are two separate and distinct types of insureds under uninsured motorist coverage and the terms of these statutes are incorporated in all motor vehicle policies where uninsured motorist coverage is provided. [See Lowery, supra.] The statute, MCA § 83-11-103(b) (Supp. 1983), in defining the term "insured" plainly states as follows:
(b) The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, *733 and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which they policy applies, or the personal representative of any of the above. The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy. (Emphasis supplied).
We already have discussed the fact that in Lowery, supra, the named insured's son [standing in the same status as the named insured], was covered under the father's policy, even though at the time of the injury, he was operating a personally owned and uninsured vehicle. In the case at bar, the named insured Bridges was covered under his policy regardless of what vehicle he was operating. Not so as to Mrs. Burkett. She was an "insured" under the second definition set out in the above quoted statute. Admittedly, she was an occupant of an uninsured vehicle and was not a relative living in the same household with Bridges, the named insured under the policy covering the Camaro.
Again, the question, therefore, is whether or not Mrs. Burkett can be said to have been an "insured" under the terms of Aetna's policy. The decisive question then is whether or not she was a passenger in a "temporary substitute automobile" as that term is set out in the policy relating to its named insured Bridges.
The applicable sections of the "protection against uninsured motorist" part of Aetna's policy under the heading "definitions" provides as follows:
The definitions under the Liability Coverage, except the definition of "insured," apply to the Uninsured Motorists' Coverage, and under the Uninsured Motorists' Coverage;
"Insured" means:
(a) the named insured and any relative;
(b) any other person while occupying an insured automobile; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Coverage applies sustained by an Insured under (a) or (b) above.
The insurance afforded under the Uninsured Motorists Coverage applies separately to each Insured, but the inclusion herein of more than one insured shall not operate to increase the limits of the Company's liability.
"insured automobile" means:
(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded,
(b) a private passenger, farm or utility automobile, ownership of which is acquired by the named Insured during the policy period, provided
(1) it replaces an insured automobile as defined in (a) above, or
(2) the Company insures under this coverage, all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named Insured notifies the Company during the policy period or within 30 days after the date of such acquisition of his election to make the Liability and Uninsured Motorists Coverages under this and no other policy issued by the company applicable to such automobile.
(c) a temporary substitute automobile for an insured automobile as defined in (a) or (b) above ...
Referring back to Part I of the policy, labeled "liability coverage" we find under the heading "Definitions" the following:
Definitions
Under the Liability Coverage:
"named insured: means the individual named in Item i of the declarations and also includes his spouse, if a resident of the same household;
"Insured" means a person or organization described under "persons Insured";
"relative" means a relative of the named Insured who is a resident of the same household;
"owned automobile" means

*734 (a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,
(b) a trailer owned by the named Insured,
(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
(1) it replaces an owned automobile as defined in (a) above, or
(2) the Company insures all private passenger, farm and utility automobiles owned by the named Insured on the date of such acquisition and the named Insured notifies the Company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the Company applicable to such automobile, or
(d) a temporary substitute automobile; "temporary substitute automobile" means any automobile or trailer, not owned by the named Insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
"non-owned automobile" means an automobile or trailer not owned by or furnished for the regular use of either the named Insured or any relative, other than a temporary substitute automobile;
Appellant obviously recognized that it was required to adopt in its uninsured motorists coverage provision the definition of "insured" as set out in the statute [MCA § 83-11-103 (Supp. 1983)]. The question then remains as to whether or not appellant insurance company did not follow the dictates of the statute in referring the definition of "Temporary substitute automobile" back to the liability coverage part where it describes such automobile as "any automobile or trailer not owned by the named insured, while temporarily used with the permission of the owner as the substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, service, loss or destruction." (Emphasis supplied).
We need again to look at the principal case of Lowery, supra, where a number of cases from this state and other jurisdictions were discussed. As hereinbefore set out, the statute set up two different types of insureds. The Lowery case adopted the language of the Virginia Supreme Court interpreting a statute identical to the Mississippi statute in the case of Allstate Insurance Co. v. Meeks, 207 Va. 897, 153 S.E.2d 222 (1967). The Virginia appellate court said the following:
It will be observed that the language of subsection (c) is plain and unambiguous. It first includes within the term "insured," "the named insured * * * while in a motor vehicle or otherwise." Here the language used does not limit or restrict the coverage to the named insured while he is in or operating the vehicle covered by the policy. On the contrary, the coverage extends to him while he is "in a motor vehicle," that is, in any motor vehicle, "or otherwise."
Under the next language of subsection (c) the term "insured" includes "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies." Here coverage to a permissive user and a guest is limited to the use of the "vehicle to which the policy applies."
... [T]he General Assembly, in enacting this statute, intended to create two classes of insured persons with different benefits to each; that the first class includes the named insured "while in a motor vehicle or otherwise", and the second class includes those who use, with the consent, expressed or implied, of the named insured, the vehicle to which the policy applies and those who are guests in such vehicle." 153 S.E.2d at 223-224. (285 So.2d at 771)
*735 The Lowery opinion also discussed a Georgia case with a statute similar to this state's statute. Gulf American Fire and Casualty Co. v. McNeal, 115 Ga. App. 286, 154 S.E.2d 411 (1967). The Georgia Court in discussing the two classes of statutorily created insured said:
The latter class are insured persons under Code § 56-407A(b) only when the "insured automobile" is involved. The former class are insured persons even where the "insured automobile" is not in any way involved in the insured's injuries.
Lowery adopted the language of the South Carolina Supreme Court in the case of Hogan v. Home Insurance Co., 260 S.C. 157, 194 S.E.2d 890 (1973). The definition of "insured" in the Mississippi statute is identical to that of South Carolina. The South Carolina Court said:
... [T]he foregoing definition, as applied to uninsured motorist coverage, refers to two classes of insureds with different coverage to each: (1) The named insured, his spouse and his or her relatives resident in the same household, "while in a motor vehicle or otherwise;" and (2) any permissive user or guest when occupying the insured motor vehicle. The members of the first class are covered at all times without reference to the use of the insured vehicle; while the members of the second are covered only while using, or a guest in "[the] motor vehicle to which the policy applies." 194 S.E.2d at 891-892.
* * * * * *
... In the original formulation of this definition, the use of the words "while in a motor vehicle or otherwise" was appropriate, although probably unnecessary to emphasize the legislative intention that the named insured, his spouse and his or her relatives residing in the same household should have the benefit of uninsured motorist coverage at all times, as distinguished from permissive users or guests who should be covered only when occupying the insured automobile. 194 S.E.2d at 892.
We, therefore are down to the basic question as to whether or not the deceased Burkett at the time of the collision with the uninsured motorist was a guest in an "insured" automobile. We already have noted the reference in appellant's policy to the definitions under the "liability coverage" as being applicable, except the definitions of "insured."
The only means by which the deceased could have been covered was for her to have been a passenger in or on a "temporary substitute automobile." The definition of this term as set out in the liability coverage part of the policy, clearly states as hereinbefore shown that a temporary substitute automobile means any "automobile or trailer not owned by the named insured and etc." Admittedly, the listed insured car, the 1976 Camaro, was not driveable. Admittedly, Bridges chose to drive another owned vehicle, not covered by insurance. We should stop here and note that according to the evidence, the deceased owned a vehicle not covered by insurance but this is immaterial to the narrow issue we are called on here to decide.
The legislature chose to make the deceased Mrs. Burkett an insured with less "rights" than Bridges. Close examination reveals the reasoning behind this. Although the named insured, including the members of his family, was covered in any instance of injury by an uninsured motorist, as a result of the premium paid, it would be impracticable to extend this coverage to a guest in or on a vehicle owned by a named insured in a policy where he only has one vehicle covered and one or more, regardless of the number, not covered. The extension of "guests" to any owned vehicles not covered and for which no premium was paid would be a legislative matter. We cannot say that public policy requires such coverage.
We conclude that the motorcycle on which Mrs. Burkett was riding as a guest was not an "insured automobile" under the terms of the policy issued by appellant under the admitted facts of this case. The deceased did not qualify under the second *736 definition of insured under the hereinbefore discussed statutes and authorities.
Reversed and judgment rendered for appellant.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE, J., not participating.