**Howard Clay CHANCELLOR, Plaintiff,**

v.

**AETNA CASUALTY & SURETY CO., Defendant.**

**No. 2:92cv285.**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Sept. 15, 1993.

Memorandum Opinion and Order on Reconsideration Nov. 4, 1993.

Doug Montague, Carey Varnado, Hattiesburg, MS, for plaintiff.

Wes Peters, Roger Riddick, Jackson, MS, for defendant.

### MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on Motion for Summary Judgment filed on behalf of the Defendant. The Court, having reviewed the motion, the briefs of the parties, the authorities cited, and being otherwise fully advised in the premises, finds as follows, to-wit;

### FACTUAL BACKGROUND

The facts necessary for the adjudication of the Defendant's Motion for Summary Judgment have been stipulated between the parties. The following is a brief synopsis of the facts. On November 22, 1989, the Plaintiff, Howard Chancellor, was driving a tractor/trailer rig hauling a load of steel for Henderson Steel Corporation ("Henderson Steel") to various customers of Henderson Steel. On the day in question, the Plaintiff was using a trailer owned by Henderson Steel and insured by Aetna, the Defendant. At approximately 6:00 a.m., the Plaintiff's rig collided with the rear of a pickup truck driven by John Lee McDonald. As a result of the accident the Plaintiff was injured. The driver of the pickup truck did not have in force any liability insurance at the time of the accident, and therefore, he was an unin-

sured motorist. At the time of the accident, the Plaintiff had uninsured motorist coverage on his tractor with Canal Insurance Company, and Canal has paid its entire limits of $10,000.00 in uninsured motorist coverage to the Plaintiff. On the day in question, Henderson Steel had a policy with the Defendant which provided $750,000.00 of uninsured motorist coverage per covered auto to the named insureds under Henderson Steel's policy.

On November 20, 1992, the Plaintiff filed a Complaint against Aetna, contending that he is entitled to recover uninsured motorist benefits under Henderson Steel's insurance policy with the Defendant.

### STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will pre-

clude summary judgment." *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light more favorable to the nonmoving party. *McPherson v. Rankin,* 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat'l Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). In other words, the "nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Litig.,* 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Union Planters Nat'l Leasing v. Woods,* 687 F.2d at 119.

### LEGAL ARGUMENT

The Defendant contends that it is entitled to summary judgment as a matter of law in that the Plaintiff is not entitled to recover uninsured motorist benefits under the insurance policy in question. The Defendant argues that the Plaintiff, as an independent contractor, is not a "named insured" under the policy in question and therefore, the Plaintiff has no basis to claim uninsured motorist benefits under the policy. More specifically, the Defendant alleges that neither Henderson Steel, nor the Defendant intended to secure or provide uninsured motorist benefits to the Plaintiff since he was an indepen-

dent contractor using his own tractor and pulling a non-listed trailer. The Defendant also contends that under the policy's definition of "occupying" the Plaintiff was not "occupying" Henderson Steel's trailer at the time of the accident. *See* Exhibit B attached to Defendant's Motion for Summary Judgment. The Defendant also argues that the Mississippi Uninsured Motorist Act and the public policy underlying the Act does not apply to commercial fleet policies, but only to individual family automobile insurance. *See* Miss.Code Ann. § 83–11–1(a) (1972). Furthermore, since the legislature restricted its concerns to private passenger type vehicles with load carrying capacities less than 1,500 pounds which were not used in the business of the insured, the Defendant contends that the trailer in question which was carrying in excess of 30,000 pounds is specifically excluded. The Defendant also argues that according to the holding of *Aetna Casualty & Surety Co. v. Barker,* 451 So.2d 731 (Miss.1984) a purported Class II insured, which the Plaintiff contends to be, cannot attempt to qualify as an "insured" under a policy by virtue of his use of a non-listed vehicle. Lastly, the Defendant contends that any public policy provided in the Uninsured Motorist Act for the benefit of a purported Class II insured is explicitly limited to the "motor vehicle to which the policy applies" and does not include the pulling of a non-listed trailer. *See* Miss.Code Ann. § 83–11–103(b).

The Plaintiff contends that under the policy in question he is a Class II insured and thus, entitled to recover uninsured motorist benefits from the Defendant. Even though the Defendant argues that Henderson Steel and the Defendant did not intend to provide uninsured motorist benefits to the Plaintiff, the Plaintiff argues that the specific language of the policy and statute controls rather than the subjective intent of the insurer or the insured. Relying on the Mississippi Supreme Court's holding in *Harris v. Magee,* 573 So.2d 646 (Miss.1990), the Plaintiff argues that the statutory language of Miss. Code Ann. § 83–11–103(b), rather than the policy language, should be used in defining "insured". Under the policy an "insured" is someone that is occupying a vehicle; according to the statutory definition an "insured" is one who permissively uses an insured vehicle. Therefore, the Plaintiff argues he is clearly an "insured" under the policy in question since he was using the trailer with the consent of the insured. The Plaintiff also argues that according to Mississippi law as set forth in *Harris v. Magee,* there is no statutory distinction between a commercial fleet policy and a policy insuring an individually owned auto for purposes of the Uninsured Motorist Coverage Act. In rejecting the Defendant's argument that the Act according to Miss.Code Ann. § 83–11–1(a) is restricted to only private vehicles carrying less than 1,500 pounds, the Plaintiff argues that the preface to the definition of this section unambiguously states that the definitions in this statute apply only to this article, i.e., Article I; it has no bearing on Article III, the Uninsured Motorist Coverage Act codified at Miss.Code Ann. § 83–11–101, et seq. The Plaintiff also argues that the Defendant's reliance on *Aetna Casualty & Surety Co. v. Barker* is misplaced since the trailer in question in the present case is an "insured vehicle" under the policy. To support this proposition the Plaintiff presented the insurance policy in question which shows that uninsured motorist coverage extended to all owned "autos". *See* Exhibit A attached to Plaintiff's Brief in Opposition to Motion for Summary Judgment, at § 1(A)(2) and Declarations Page. In the policy the definition of "auto" includes trailers; therefore, the Plaintiff argues that the trailer was an "insured vehicle" for purposes of uninsured motorist coverage. The Plaintiff also argues that a vehicle does not have to be listed in order to be insured for uninsured motorist coverage.

Since this is a diversity case the Court is bound to apply the law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Mississippi law, there are several well settled propositions concerning uninsured motorist coverage. "The uninsured motorist statute is to be liberally construed so as to provide coverage." *Harris v. Magee,* 573 So.2d 646, 651 (Miss.1990) (citations omitted). "The purpose of the uninsured motorist statute is to give the same protection to the person injured by the uninsured motorist as the

injured party would have if injured by an insured person." *Id.* A commercial fleet is not to be distinguished from a regular auto policy. "[O]ur statutory scheme does not distinguish a 'commercial fleet policy' from any other type of auto insurance policy nor is it defined therein." *Id.* at 655.

■ The first question this Court must decide is whether the trailer which the Plaintiff was pulling is an "insured vehicle" for the purposes of the uninsured motorist coverage provided by the policy at issue. The policy in question contains a declaration page which indicates the policy has $750,000.00 of uninsured motorist coverage. *See* Exhibit A attached to Plaintiff's Brief at "Business Auto Coverage Form Declarations". Under Section I(B) of the "Business Auto Coverage Form" the policy states:

1. If symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

Exhibit A attached to the Plaintiff's Brief, at § I of the "Business Auto Coverage Form". On the declaration page in the column labeled "Covered Autos", the Defendant has indicated symbol number "2" in the category of uninsured motorist as applicable to this policy. The definition for symbol "2" reads as follows:

2 = OWNED "AUTOS" ONLY. Only those "autos" you own.... This includes those "autos" you acquire ownership of after the policy begins.

Exhibit A attached to the Plaintiff's Brief, at § I of the "Business Auto Coverage Form". Trailers are included in the definition of "autos" which is defined on the definition page of the policy. Exhibit A, at § V(B). Based on the language of the policy in question, the Court finds that the trailer in issue is an "insured vehicle" under the uninsured motorist coverage provision of Henderson Steel's policy. *Aetna Casualty & Surety Co. v. Barker,* 451 So.2d 731 (Miss.1984) cited by the Defendant is inapplicable. In *Barker* the Mississippi Supreme Court found that the motorcycle on which the Plaintiff was riding was not an "insured vehicle" under the poli-

cy; therefore, the court in *Barker* held that the plaintiff could not qualify as an "insured" under the policy. *Id.* In the present case, the trailer is an "insured vehicle" according to the language as set forth in the insurance policy.

■ The Court finds that the definition of motor vehicle found in Miss.Code Ann. § 83–11–1(a)(1)(2) has no bearing on the Court's ruling on this issue. Although Miss.Code Ann. § 83–11–1(a) defines motor vehicle as a private passenger vehicle with a load carrying capacity less than 1,500 pounds, the Court finds that the preface of Miss.Code Ann. § 83–11–1(a) clearly states "[a]s used in this *article....*" (Emphasis added). Miss. Code Ann. § 83–11–1 is found in Article 1, titled "Cancellation or Nonrenewal of Policy" whereas the Uninsured Motorist Coverage Act is codified in Article 3 beginning with Miss.Code Ann. § 83–11–101. Therefore, in the opinion of the Court, Miss.Code Ann. § 83–11–1 does not affect the Uninsured Motorist Coverage Act.

■ The next question the Court must answer is whether the Plaintiff, the driver of the tractor pulling the insured trailer, is an "insured" under the uninsured motorist coverage provision of Henderson Steel's policy. "Insured" is defined in the policy as:

B. WHO IS INSURED

1. You

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss, or destruction.

4. Anyone for damages he is entitled to recover because of "bodily injury" sustained by another "insured."

Exhibit A, at B of the Policy in question, under the section titled "Mississippi Uninsured Motorists Coverage Bodily Injury and Property Damage". Under the Mississippi Uninsured Motorist Coverage Act an "insured" is defined as:

(b) The term "insured" shall mean the named insured and, while resident of the

same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies.... The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.

Miss.Code Ann. § 83–11–103. The question the Court must decide is whether the narrow definition of "insured" found in the insurance policy or the broad statutory definition of "insured" applies. In the opinion of the Court the holding of *Harris v. Magee*, 573 So.2d 646 (Miss.1990), a Mississippi Supreme Court case which addressed this same legal issue, applies to the case at hand.

In *Harris*, the court held that the statutory definition of "insured" determines whether an individual is entitled to uninsured motorist benefits rather than the policy language which requires that an insured be one who is "*occupying*" a covered auto. *Harris*, 573 So.2d at 650 (emphasis added) (the same definition and wording found in *Harris* is found in the policy in question before this Court). *Harris* involved the death of an employee who had parked his insured vehicle and crawled underneath an uninsured self-propelled crane which had experienced mechanical difficulties. *Id.* at 648. The decedent was killed while crawling out from underneath the crane. The court found that the survivors of the decedent were able to recover uninsured motorist benefits from the insurance policy on the vehicle which the deceased had been driving before he stopped to render assistance to the crane. *Id.* Even though the policy defined "insured" as "anyone else occupying a covered auto" the Mississippi Supreme Court held:

Without question, the trial record supports Travelers [the insurance company] first contention that Larry [the deceased] was not "occupying" the insured vehicle at the time of the accident. Linda [the widow of the deceased] does not contest this point. As to Travelers' alternative position, that a factual issue existed concerning Larry's intentions when crawling from beneath the crane, this posture is relevant only in analyzing whether he was in the process "getting in" the vehicle at the time of the accident in conformity with policy terms. If our analysis stopped with the policy definition of "insured", both of these arguments would have merit. However, our analysis goes beyond the terms of the policy. *Only if the statutory definition of "insured" were disregarded would Travelers have been entitled to a directed verdict.*

*Id.* at 650 (emphasis added). The court in *Harris*, citing *Stevens v. U.S. Fidelity & Guaranty Co.*, 345 So.2d 1041 (Miss.1977), recognized that "[t]he terms and provisions of the Mississippi Uninsured Motorist Coverage Act are written into every automobile liability policy issued in the state...." *Harris*, 573 So.2d at 650. Therefore, the *Harris* court found that "the lower court correctly supplemented the policy definition of 'insured' with the statutory definition." *Id.*

The Court has considered the fact that the policy in question has a more expansive definition of "insured vehicle" than does the Mississippi Uninsured Motorists Statute. Conversely, the definition of who is an "insured" is more expansive under the Mississippi Uninsured Motorists Statute than is the policy. It is only by applying the policy definition of "insured vehicle" and combining that with the statutory definition of who is an "insured"—that is applying the policy definition in one instance and the statutory definition in another instance—the plaintiff obtains coverage. Broadening the coverage in this manner has given the Court some concern. However, the Defendant has known, or is charged with knowledge, since 1977 that the Mississippi Supreme Court (in *Harris*) engrafted the statutory definition of who is an "insured" into all of the Defendant's policies. Consequently, the Defendant, if it did not want to be put in this position, could have amended its definition of "insured vehicle" to reduce its exposure. Having failed to do so, the Defendant must live with the language of its policy together with the statutory language engrafted by *Harris*. This situation is analogous to the proposition that ambiguous terms in insurance policies are construed against the insurance companies which write the policies. *Employers Ins. of Wausau v.*

*Trotter Towing Corp.*, 834 F.2d 1206, 1210 (5th Cir.1988).

Based on the holding of *Harris* and the proposition that the uninsured motorist statute is to be liberally construed so as to provide coverage, the Court finds that the statutory definition of "insured" applies rather than the policy definition of "insured". According to Miss.Code Ann. § 83–11–103(b) the Plaintiff would qualify as an "insured" since at the time of the accident the Plaintiff was using the insured trailer with the consent of the insured, Henderson Steel.

The fact that the Plaintiff was an independent contractor at the time of the accident has no bearing on whether the Plaintiff is an "insured" under the policy. In adopting the holding of *Harris* the Court rejects the Defendant's argument that the court in *Harris* did not consider the provision of Miss.Code Ann. § 83–11–1(a). As stated earlier, Miss. Code Ann. § 83–11–1(a) does not affect the Uninsured Motorist Coverage Act codified at Miss.Code Ann. § 83–11–101, *et seq.*

The Court finds that the Defendant is not entitled to summary judgment as a matter of law.

SO ORDERED AND ADJUDGED.

### *MEMORANDUM OPINION AND ORDER ON RECONSIDERATION*

This matter is before the Court on Defendant's Motion for Reconsideration of the Court's previous ruling that the policy in question provides uninsured motorist coverage to Plaintiff and alternatively for Clarification. The Court, having reviewed the Motion, the briefs of the parties, the authorities cited, and being otherwise fully advised in the premises, finds and orders as follows, to-wit:

The Motion for Reconsideration is denied. Defendant, in its Memorandum in Support of its Motion for Reconsideration, refuses to acknowledge that it, not this Court, wrote the language of the policy which is the subject matter of this suit. Defendant argues that since its policy has a "schedule of covered autos you own," and since the trailer in question is not listed on this schedule, that means there is no uninsured motorist coverage.

What the Defendant ignores is that the plain language of the policy says that the trailer is covered. Section "V" of the policy provides that " 'auto' means ... trailer." Section 1 of Page 1 of the policy declares that if a certain symbol is designated next to a coverage that the automobiles represented by the symbol have that particular coverage. The policy provides that if the symbol "2" is adjacent to a certain coverage that it means that particular coverage is provided for "those autos you own." The symbol "2" is placed under the column labeled "covered autos" on the line providing uninsured motorist coverage. Under Item Two on the Declaration page the policy, referring to "covered autos," explicitly states: " 'Autos' are shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form to the name of the coverage."

The policy was issued to Henderson Steel Corporation. There is no dispute that Henderson Steel owned the trailer in question. Since the definition of auto includes trailer, and since all autos owned by Henderson Steel are covered for uninsured motorist coverage, the trailer is plainly and clearly covered for uninsured motorist purposes.

Plaintiff was using Henderson Steel's trailer with Henderson Steel's permission and in furtherance of Henderson Steel's business. Thus Plaintiff was covered by the uninsured motorist provisions of the policy in question.

Defendant strenuously argues that because the trailer is not listed "on the schedule of covered autos you own," and because no separate premium is shown on the policy for this trailer that there is no uninsured motorist coverage for the trailer. This ignores other plain language of the policy which provides uninsured motorist coverage for the trailer. No where in the policy or the schedule does it say that you have coverage "if the vehicle or trailer is listed on this schedule." Neither does the policy have any language that says you have uninsured motorist coverage "if you pay a premium." As to symbol "7" the policy does limit those coverages as to which that symbol is listed to " 'autos' ... for which a premium charge is shown." If Defendant

wanted to avoid uninsured motorist coverage as to the trailer, all it had to do was insert the same language as to symbol "2" that was inserted as to symbol "7."

This Court is of the opinion that the failure to list this trailer on the "schedule of covered automobiles you own" does not indicate that there is no uninsured motorist coverage for the trailer in view of the plain language contained in other sections of the policy. The Court is likewise of the opinion that this does not create a conflict or an ambiguity in the policy. However, even if there is an ambiguity between the "schedule of covered autos you own" and other express provisions of the policy, such ambiguities are to be construed against the Defendant since Defendant wrote the policy. In *Pearthree v. Hartford Accident. & Indem. Co.*, 373 So.2d 267, 270 (Miss.1979) (citation omitted), the Mississippi Supreme Court said:

> As we have said "[t]he courts of this State have consistently held that ambiguity and doubt in policies be resolved against the writer of the policy, the insurance company, and in favor of the insured."

As mentioned, Defendant strongly argues that there should be no uninsured motorist coverage because no separate premium was set out as to the trailer. It is true that a number of cases involving stacking use a rationale that separate premiums were paid as to each vehicle as to which stacking of limits was permitted. This particular issue being addressed by this Court, however, does not relate to stacking. It involves the question of the interpretation of policy language.

Even in regard to stacking, in *Pearthree, supra*, the court said:

> We also think that charging a separate premium would not necessarily determine the propriety of aggregating, although it is an element to be considered with other aspects of the case.... It is not clear whether Hartford charged separate premiums for the uninsured motorist coverage ... but, as we have said, *the charging of separate premiums is not decisive* ... aggregation *flows from the ambiguity of the limiting clauses* ... not from the charging of separate premiums.

*Pearthree*, 373 So.2d at 270 (emphasis added). Although the *Pearthree* language had to do with stacking, and not the question of interpreting policy language to determine whether uninsured coverage was available, the analysis and the logic is the same. Consequently, the result should be the same.

There are several well settled propositions concerning uninsured motorist coverage in Mississippi. "The uninsured motorist statute is to be liberally construed so as to provide coverage." *Harris v. Magee*, 573 So.2d 646, 651 (Miss.1991) (citing *Washington v. Georgia Am. Ins. Co.*, 540 So.2d 22, 25 (Miss. 1989); *Wickline v. U.S. Fidelity & Guar. Co.*, 530 So.2d 708, 711 (Miss.1988); *Stevens v. U.S. Fidelity & Guaranty Co.*, 345 So.2d 1041, 1043 (Miss.1977)). "The purpose of the uninsured motorist statute is to give the same protection to the person injured by the uninsured motorist as the injured party would have if injured by an insured person." *Harris v. Magee*, 573 So.2d at 651.

Aetna is the one that decided to write its policy so that uninsured motorist coverage is provided to trailers as well as listed vehicles. The mandatory minimum coverage required by law as to the definition of who is insured is one "using" a covered vehicle with "permission." Aetna is charged with notice of and bound by such statutory mandatory minimum coverage. Aetna is the one that decided not to charge a premium for this coverage. They cannot now be heard to say "well we didn't intend what we wrote in our policy." Defendant is bound by the language which it put in its policy as well as the mandatory minimum language permitted by the statute.

For the above reasons, as well as the reasons stated in the original opinion, the Court declines to reconsider its previous determination that the trailer being used by the Plaintiff was insured under the uninsured motorist provisions of the policy in question.

### *MOTION TO DETERMINE COVERAGE*

Alternatively, the Defendant Aetna has requested the Court to clarify its ruling as to how much uninsured motorist coverage is available to Plaintiff Chancellor. That question was not raised in the previous mo-

tion before the Court and thus was not addressed by the Court. In effect, Defendant's alternative motion is a motion for partial summary judgment as to the amount of coverage applicable in this case. Since both sides have briefed the question, the Court will treat the alternative part of the motion as another motion for summary judgment to determine the amount of coverage available to Plaintiff under the policy in question.

Miss.Code Ann. § 83–11–111 (1972) provides as follows:

Any policy which grants the coverage required for motor vehicle liability insurance may also grant any lawful coverage in excess of, or in addition to, the coverage specified for a motor vehicle liability policy, and the *excess or additional coverage shall not be subject to the provisions of this article,* except as otherwise provided in this article. With respect to a policy which grants this excess or additional coverage, the term 'motor vehicle liability policy' as used herein shall apply only to that part of the coverage which is required by this article.

Any binder issued pending the issuance of a motor vehicle liability policy shall be considered as fulfilling the requirements for such policy. (emphasis added).

Article 3 deals with uninsured motorist coverage. Miss.Code Ann. § 83–11–111 is the last section in Article 3. In order to determine the amount of coverage applicable to this case, a careful reading of Section 83–11–111 is required. Miss.Code Ann. § 83–11–101 requires all automobile liability policies to contain uninsured motorist coverage unless such coverage is waived in writing. Prior to 1979 this section mandated what might be referred to as "pure uninsured motorist coverage." However, in 1979 this section was amended to mandate, in addition to a mandatory minimum, additional uninsured motorist coverage, at the option of the insured, up to the amount of the liability insurance coverage. This amendment basically added what was then referred to as *"underinsured* motorist coverage."

Miss.Code Ann. § 83–11–111 says that "any policy which grants the coverage required for motor vehicle liability insurance may also grant any lawful coverage in excess of, or in addition to, the coverage specified for a motor vehicle liability policy." The phrase "coverage required for motor vehicle liability insurance" refers to Miss.Code Ann. § 63–15–3 which requires a minimum liability coverage of $10,000 per individual or $20,000 per accident. Section 83–11–111 goes on to provide "the excess or additional coverage shall not be subject to the provisions of this article." The phrase "the excess or additional coverage" refers to that coverage in excess of the mandatory minimum coverage of $10,000 (Section 63–15–3) up to the amount of the coverage for liability as elected, or determined, by the insured. Thus Section 83–11–111 provides that the statutory language relating to uninsured motorist coverage is written into each uninsured motorist policy only to the extent of the minimum mandated coverage of $10,000 per person (Section 63–15–3). Section 83–11–111 specifically provides that "the excess or additional coverage shall not be subject to the provisions of this article." The words, "this article" refer to the Uninsured Motorist Act, Article 3.

As previously noted, Aetna's policy in this case defined an insured as one "occupying" a covered "auto." The Plaintiff was not "occupying" the covered vehicle (the trailer). However, the statute requires coverage for one who "uses" a covered vehicle with "permission." *See* Miss.Code Ann. § 83–11–103(b). This affords and requires minimum and mandatory coverage for all uninsured policies in Mississippi. Thus, as previously held, Defendant cannot use policy language making coverage for "covered persons" more restrictive than the language contained in the Act (Article 3). Reading Plaintiff's policy together with the statutory language engrafted into said policy, the policy in question clearly gives coverage.

Having determined that there is coverage in this case, the Court is now presented with the question of what is the limit of this coverage? The Court is not aware of any decisions of the Mississippi Supreme Court answering this specific question and applying Section 83–11–111 to the facts of a case similar to the present case. Since this appears to this Court to be a case of first

impression, if there was a process available, this Court would certify this question to the Mississippi Supreme Court. However, there is no such process available to this Court and this Court is *Erie* bound to interpret this Mississippi Code section as this Court feels the Mississippi Supreme Court would interpret this section.

This Court is presented with a situation where coverage results by applying the policy definition of "insured vehicle" and combining that with the statutory definition of persons "insured." Thus coverage results only by engrafting statutory language into the policy. As the Court interprets Section 83–11–111 that is exactly the situation as to which Section 83–11–111 is applicable. Section 83–11–111 in effect holds that if the statutory language is engrafted into a policy, then the statutory language will be applied only to the $10,000 minimum mandated by Section 63–15–3. Stated another way, if coverage results by a resort to statutory language, not policy language, the minimum mandatory coverage of $10,000 is all that is afforded by such statutory language. To hold otherwise would mean that Miss.Code Ann. § 83–11–111 has no meaning and was put in the Article for no purpose. The Court recognizes that Plaintiff contends that there is $750,000 coverage as to the trailer involved, not the $10,000 as determined by the Court.

■ The next question with which the Court is presented has to do with the issue of stacking. Is stacking limited to only the vehicles listed in the schedule, or is stacking permitted as to all "covered autos" which by policy definition includes all trailers, including those not listed on the scheduled? In the opinion of the Court, that question was answered in the case of *Harris v. Magee, supra.* In that case, the insurance company argued only the vehicles, and not the trailers listed in the policy should be stacked. *Harris,* 573 So.2d at 655. The Mississippi Supreme Court agreed and held:

> Miss.Code Ann. § 83–11–103(b) (Supp. 1990), specifically refers to use of a "motor vehicle." This indicates that stacking is necessarily limited to those "motor vehi-

cles" listed in the schedule of covered vehicles.

*Id.*

Accordingly, even though there is coverage on the particular trailer that was being used by Plaintiff, on the day in question, for the reasons previously stated, the other trailers owned by Henderson Steel although covered, cannot be stacked in accordance with the holding of *Harris.*

This Court notes that the Mississippi Supreme Court has previously ruled that the analysis for determining whether a vehicle is underinsured for the purposes of obtaining coverage is not the same analysis that is conducted for determining the amount of the limits of coverage. In *State Farm Mutual Automobile Ins. Co. v. Davis,* 613 So.2d 1179, 1183 (Miss.1992), the Mississippi Supreme Court said:

> In *Thiac [v. State Farm Mutual Automobile Insurance Co.,* 569 So.2d 1217] [ (Miss. 1990) ], this Court noted that the stacking of policies for the purpose of determining whether a vehicle was underinsured was different from the stacking of policies for the purpose of recovering damages.

> This Court distinguishes the different approaches we took in *Wickline* concerning stacking for the purpose of establishing the insured vehicle as underinsured, as opposed to stacking for the purposes of recovering damages.

The *Davis* case presented a different question than the questions presented in this case, but the reasoning is analogous. The Court in *Davis* used one analysis to determine the issue of stacking to determine coverage and then used a different analysis as to stacking for determining the limits of coverage. In this case, this Court has had to conduct an analysis of the language of the policy to determine coverage and now is considering what coverages of what vehicles are to be stacked. This is another question that this Court considers to be a question of first impression and which this Court would like to certify to the Mississippi Supreme Court if there was such a procedure.

This Court has determined that there is a mandatory minimum coverage of $10,000 in

accordance with the language of the policy and the provisions of the Mississippi Uninsured Motorist Act as to the trailer being used by Plaintiff. The Court has also determined that only coverage for "motor vehicles" can be stacked and that other trailers, though covered, cannot be stacked. There are five vehicles listed in the policy under consideration. However, the Defendant asserts that one of those vehicles was deleted from the policy on the day before the accident in question. If that is correct, only the coverages for the four remaining vehicles will be stacked.

The question now confronting the Court is the question of what "limits" for these four vehicles are to be stacked? Is the amount of $750,000 set out in the policy as to each of these four to be stacked, or is the statutory minimum of $10,000 for each of these four vehicles to be stacked?

The Court has already mentioned that the Uninsured Motorist Act, under applicable Mississippi decisions, is to be "liberally construed" so as to provide coverage, *Harris,* 573 So.2d at 651. The Mississippi Supreme Court has also held that "stacking is firmly embedded in our uninsured motorist law" and "stacking has become a positive gloss upon our uninsured motorist act." *Wickline,* 530 So.2d at 714.

In the present case, the insured and the insurer agreed that there would be $750,000 coverage for each of the vehicles listed on the schedule. A separate premium was paid for each of these coverages. The Court has already determined that there is a mandatory minimum coverage of $10,000 on the trailer which Plaintiff was using. For the purposes of stacking, does the Court use the $750,000 coverage for each vehicle agreed upon between the insuring parties, or does Miss.Code Ann. § 83–11–111 restrict the limits for these four vehicles to the mandatory minimum of $10,000 each? Even though the parties agreed upon $750,000 coverage for each of these vehicles and even though a separate premium was paid as to each of these vehicles, the Court is of the opinion that since the language of the statute had to be resorted to in order to provide coverage in the first place, that the limits as to each of

these vehicles to be stacked is likewise restricted by the language of Section 83–11–111. Consequently, assuming that one of the five vehicles was appropriately deleted from the policy prior to the accident in question, the amount of Defendant's limits available to Plaintiff is the $10,000 minimum coverage on the trailer being used by Plaintiff together with four limits of $10,000 as to each of the four vehicles listed in the policy, making a total of $50,000 aggregate coverage. It is the opinion of this Court that the limits as to the trailer and each of the listed vehicles is $10,000 as a result of the limiting language of Section 83–11–111.

If the Court had determined that the $750,000 limit specified in the policy was applicable to the four listed vehicles, then the Court would have been presented with the question of whether *In re Koestler for the Benefit of Koestler,* 608 So.2d 1258 (Miss. 1992) is applicable. The Mississippi Supreme Court, in *Koestler,* held that because of the plain and unambiguous limiting language of the policy before the court in that case only the statutory mandated minimum coverage of $10,000 could be stacked as to each of the listed vehicles. *Id.* at 1264. This Court, having determined that Section 83–11–111 controls this case, does not reach the question of whether there is limiting language in the policy under consideration in this case that would also limit Defendant's exposure to $10,000 per vehicle. In the Court's opinion, the limiting language of this policy is not as clear and unambiguous as was the policy language involved in *Koestler.* However, since it is not necessary for the Court to address this question, the Court has not conducted a thorough analysis to determine whether *Koestler* would limit the coverage to $10,000 per vehicle. Had this Court not found Section 83–11–111 to be applicable, then the Court would have conducted such analysis.

The Court would make another point. The majority in *Koestler* determined that because of the clear and unambiguous restrictions contained in that policy that only the statutory mandated minimum of $10,000 should be stacked as to each listed vehicle. *See Koestler, supra.* The Court is mindful of the very

logical argument made by Justice Banks in his dissent, that the statutory minimum was not $10,000, but that it was the amount, up to the amount of liability coverage, that the insured selected. His reasoning was as follows:

> The problem is that it [the majority opinion] accepts as the minimum amount the amount set forth in Miss.Code Ann. § 63–15–3. This result is clearly contrary to the express provisions of the Mississippi Uninsured Motorist Act. Miss.Code Ann. § 83–11–101 (1991). Furthermore, this result is not supported by this Court's prior decisions in this area.
>
> Mississippi Code Annotated, Section 83–11–101 (1991), expressly provides:
>
>> No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provision undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motorist vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, under provisions approved by the Commissioner of Insurance; *however, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section.* The coverage herein required shall not be applicable for any insurance named in the policy shall reject coverage in writing and provided further, that unless the named insured requests coverage in writing, such coverage need not be provided in any renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer.
>
> Miss.Code Ann. § 83–11–101 (1991). Clearly, there is an inconsistency between the CRE limitation and the provision of § 83–11–101 that the insured be given the

opportunity to purchase as much uninsured coverage as he wishes up to the limit of his liability insurance.

*Id.* at 1271 (Banks, J., dissenting) (emphasis in original).

Justice Banks' argument had to do with Miss.Code Ann. § 83–11–101. This Court has determined that this case is governed by Miss.Code Ann. § 83–11–111 rather than Miss.Code Ann. § 83–11–101. Consequently, Justice Banks' reasoning would not be applicable in this case.

The Court is not unmindful of the fact that this is a tragic case. Indications are that the damages suffered by Plaintiff as a result of his injuries in this case far exceed the amount of coverage available. While the Court is sympathetic of Plaintiff's plight, the Court cannot, and should not, mandate coverage not provided under the terms of the policy or in accordance with the Mississippi Uninsured Motorist Act. Plaintiff in this case would have had no coverage, but for the statutory language of the Mississippi Uninsured Motorist Act.

The Court would be remiss if it failed to point out that Defendant, in its brief, has stated that cases and statutes hold thus and so, when these cases did not so hold. Specifically, the Court is referring to Defendant's argument that Miss.Code Ann. § 83–11–1(a)(1)(2) is applicable; Defendant's argument that stacking is not permitted under fleet policies; Defendant's argument that *Harris, supra,* holds that a trailer must be listed on a schedule to be covered when in fact what the Mississippi Supreme Court actually held was that coverage for trailers could not be stacked even though listed on the schedule; and Defendant's argument that in *Harris, supra,* the Plaintiff "sought to stack the higher limits of the policy" when in fact what the Plaintiff sought to do, and the Mississippi Supreme Court refused to permit, was the stacking of higher limits contained in a *previous* policy. Defendant's argument as to *Davis, supra,* was misplaced but not misstated. Plaintiff, in that case, sought to stack coverage under *separate* policies covering vehicles in which Plaintiff was not riding and vehicles not owned by Plaintiff. Defendant's misstatements as to the

holding or effect of these authorities caused the Court to have to spend unnecessary time scrutinizing these authorities and detracted from Defendant's valid arguments. If a misstatement had occurred in only one instance then the Court would not be so concerned, but the misstatements by the Defendant occurred in at least four instances. In the future, this should not occur.

Based on the foregoing, the Court determines that the uninsured motorist limits of coverage available to Plaintiff is $50,000. The Defendant's Motion for Reconsideration of the Court's previous ruling on the question of coverage is DENIED.

SO ORDERED AND ADJUDGED.